## W. P. H. McFADDIN ET AL. v. B. C. HEBERT ET AL.

No. 5032. Decided March 27, 1929.
(15 S. W., 2d Series, 213.)

*E. L. Nall, J. C. L. McFaddin,* and *Howth, Adams & Hart,* for appellants.

It is objectionable and contrary to the fundamental purpose in submitting cases on special issues for an attorney to tell the jury what answers they should make in order to find for his client, and thus inform them of what will be the legal effect of their answers to the issues of fact; the object in having a jury to find the issues of fact, instead of a general verdict for one party or the other, being to have the basic facts of the case determined by the jury without their considering which one of the parties would, by their findings, win the judgment. Morris v. McGough, 230 S. W., 1092; Railway v. Osborne, 270 S. W., 922; Railway v. Fleming, 203 S. W., 105; Ware v. Jones, 242 S. W., 1022; Rowley v. Braly, 286 S. W., 241; Railway v. Hodnett, 182 S. W., 7; Patterson v. Bushong, 196 S. W., 962; Railway v. Long, 219 S. W., 212; First Natl. Bank v. Porter, 204 S. W., 463; Fain v. Nelms, 156 S. W., 281; Merchants Life Ins. Co. v. Griswold, 212 S. W., 807; Wichita Valley Ry. Co. v.

Southern Casualty Co., 284 S. W., 940; Railway v. Kaylor, 291 S. W., 216; Railway v. Clement Grain Co., 295 S. W., 234; McCreary v. Railway, 1 S. W. (2nd Series), 868; Barnes Bros. v. Railway, 1 S. W. (2nd. Series), 273; Stiles v. Union Terminal Co., 1 S. W. (2nd Series), 947; Humble Oil & Refining Co. v. McLean, 280 S. W., 557; Anderson v. Reich, 260 S. W., 162; Railway v. Harrington, 235 S. W., 188; Railway v. Harvey, 276 S. W., 895; Abrams v. Bradshaw, 2 S. W. (2nd Series), 917; Seale v. Shultz, 3 S. W. (2nd Series), 563; Conlish v. Bender, 245 S. W., 941; Crawford v. El Paso Sash & Door Co., 288 S. W., 169.

. *Barry & Burgess* and *A. D. Lipscomb,* for appellees.

Where it is impossible that the jury should have failed to understand from the evidence educed and arguments of appellants how appellees and appellants respectively wished particular questions to be answered, it is not reversible error for counsel in the opening argument to say how appellees wished them decided, and this is particularly true where the case presents only one ultimate or decisive issue, although other questions of mere circumstance are submitted, at the request of appellants and over objections of appellees.    Fain v. Nelms, 156 S. W., 281; G. H. & H. Ry. v. Fleming, 203 S. W., 105.

There is no fixed policy of denying to a jury all knowledge of the effect of their findings on special issues, and the matter of telling them, or allowing counsel to tell them, is within the discretion of the trial court.    Art. 1, Sec. 15, Constitution of Texas; Arts. 2189 and 2190, R. S. of Texas, 1925; Railway Co. v. Harling, 260 S. W., 1016; Tex. & Ft. S. R. Co. v. Casey, 172 S. W., 734; J. M. Guffey Pet. Co. v. Dinwiddie, 182 S. W., 444; Blum v. Jones, 86 Texas, 497; 38 Cyc., 1485.

Where only one material issue is submitted, which is vital and decisive of the entire case, there can be no error in permitting counsel to state the effect of a finding on it.    Payne v. McIntyre (C. C. A.), 263 S. W., 1100; Insurance Co. v. Barcus, 290 S. W., 275.

Since the jury must have known the effect or tendency of their finding on the first question, it could not be error to state the effect. Railway Co. v. Harling, 260 S. W., 1016.

Mr. Judge CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is a boundary suit instituted in the District Court of Jefferson County, Texas, and is before this court on certified questions.    The

certificate of the Court of Civil Appeals, which we accept for the purpose of answering the questions certified, is rather lengthy, but it is necessary for us to set it out in full in order that our answers may be fully understood. The certificate is as follows:

## CERTIFICATE.

"This is a boundary suit instituted by appellees against appellants involving the correct location on the ground of the Holbrook, Moore, San Geronimo and B. & C. No. 1, a group of adjoining surveys in Jefferson County, Texas, owned by appellees, originally surveyed by James Ingalls, County Surveyor, on March 14 and 15, 1881. They were four of a large block of surveys made at that time from a large body of land lying west of the Gahagan League and its adjoining surveys and east of the northwest corner of the McGaffey League, the Russell and Howard surveys, and a series of T. & N. O. surveys running north from the Howard. Of the surveys in controversy, the Holbrook and Moore lie between the Burrell survey on the east and the northwest corner of the McGaffey League and the Russell and Howard on the west. The Holbrook and Moore called for these as adjoining surveys. These two surveys also call for the north line of the McGaffey League. Because of the admitted location on the ground of the southwest corner of the Gahagan and of the McGaffey Labor, which lies immediately west of the Gahagan League and on the north boundary line of the McGaffey League and of the Burrell, which lies immediately west of the McGaffey Labor and on the north line of the McGaffey League, there is an excess of 1054 varas in the south boundary lines of the Holbrook and Moore if they be permitted to occupy all the land between the Burrell on the east and the northwest corner of the McGaffey League and the Russell and the Howard on the west, creating a large excess in the acreage of these two surveys. Because of this condition, it was the theory of appellants that the call of the Moore for the northwest corner of the McGaffey League and the Russell and Howard surveys was a mistake. Appellants conceded to the Holbrook and Moore surveys all the land that the calls for distance of their field notes would give them. This theory was submitted to the General Land Office, which on the showing made by appellants recognized an error in the call of the Moore for the northwest corner of the McGaffey League and the Russell and Howard, and patented to appellants all the land lying between the Moore on the east, giving it and the Holbrook their calls for course and distance and their full acre-

age, and the northwest corner of the McGaffey League and the Russell and Howard on the west. Appellees contended that this land was a part of the four surveys for which they sued. The San Geronimo Survey lies immediately north of the Moore and B. & C. No. 1 immediately west of the San Geronimo. On the issue thus suggested, the trial court submitted to the jury Issue No. 1, as follows, which the jury answered in the affirmative:

" 'Did James Ingalls, in making the survey of the E. L. Moore and other connecting surveys go to the northwest corner of the John McGaffey League, as called for in his field notes of the Moore Survey, or did he not?

" 'Answer "yes" or "no." '

"This, in fact, was the controlling issue in the case. On the jury's affirmative answer to this question, appellees were, as a matter of law, entitled to a judgment for the land in controversy, regardless of how the jury might have answered the other twelve questions submitted to them, and had the jury answered Question No. 1 in the negative, appellants would, in like manner, have been entitled to a judgment. The evidence on this issue was sharply conflicting and was sufficient to support a finding either way. Questions 2 and 3 were as follows, answered as indicated:

" 'Special Issue No. Two (2). Do you find from a preponderance of the evidence that the Southeast corner of the John McGaffey Labor was located upon the ground prior to 1881 at the cedar stake as identified by the witnesses introduced before you?

" 'Answer "yes" or "no." '

"The jury answered this issue: 'Yes.'

" 'Special Issue No. Three (3). Do you find from the evidence that the Southwest corner of the Dennis Gahagan survey was located upon the ground prior to 1881 at the cedar stake as identified by the witnesses introduced before you?

" 'Answer "yes" or "no." '

"The jury answered this issue: 'Yes.' These issues were uncontroverted and could have been answered in no other way. Questions 4 and 5 were as follows, answered as indicated:

" 'Special Issue No. Four (4). If you have answered Question Number Two in the affirmative then you will answer this question:

" 'Did the surveyor, James Ingalls, know of the location of the cedar stake as now located upon the ground, as identified by the witnesses, as the southeast corner of the John McGaffey Labor on or prior to March the 3rd, 1881?

" 'Answer this question "yes" or "no." ' "

"The jury answered this issue: 'no.'

" 'Special Issue No. Five (5). If you have answered Question Number Three in the affirmative then you will answer the following question:

" 'Did the surveyor, James Ingalls, know of the location of the cedar stake as now located upon the ground, and identified by the witnesses, as the southwest corner of the Dennis Gahagan survey, on or prior to March the 3rd, 1881?

" 'Answer "yes" or "no." ' "

"The jury answered this issue: 'no.' The answers to these questions were wholly without support and against all the evidence in the record, and if the judgment in the least rested upon the jury's answers to these questions they would, under appellants' assignments of error, have to be set aside. Questions 6 to 13 were as follows, answered as indicated:

" 'Special Issue No. Six (6). When James Ingalls surveyed and located upon the ground the San Geronimo Irrigation Company Survey, at what distance did he locate the west line of said survey from the northeast corner of the Glenn Survey as located on the ground with reference to the said cedar stake?

" 'Answer this question by stating the distance.'

"The jury answered this issue: '5779 varas.'

" 'Special Issue No. Seven (7). When James Ingalls surveyed and located the Holbrook Survey upon the ground at what distance did he locate the west line of said survey from the southeast corner of the Burrell Survey as now located on the ground with reference to the said cedar stake?

" 'Answer by stating the distance.'

"The jury answered this issue: '2995 varas.'

" 'Special Issue No. Eight (8). When James Ingalls surveyed and located upon the ground the E. L. Moore survey at what distance did he locate the east line of said survey from the southeast corner of the Burrell Survey as now located on the ground with reference to the said cedar stake?

" 'Answer by stating the distance.'

"The jury answered this issue: '2995 varas.'

" 'Special Issue No. Nine (9). When James Ingalls surveyed and located upon the ground the Pedro De la Garza survey, at what distance did he locate the west line of said survey from the southwest corner of the N. Coleman Survey?

" 'Answer by stating the distance.'

"The jury answered this issue: '3095 varas.'

" 'Special Issue No. Ten (10). When James Ingalls surveyed and located upon the ground the Pedro De la Garza Survey at what distance did he locate the west line of said survey from the west line of the Dennis Gahagan survey as now located on the ground with reference to the said cedar stake?

" 'Answer by stating the distance.'

"The jury answered this issue: '5511 varas.'

" 'Special Issue No. Eleven (11). When James Ingalls made his survey on March the 3rd, 1881, beginning on the south side of Taylor's Bayou and ran a line due south 18,150 varas at what distance did he locate this line west from the west line of the Dennis Gahagan survey as now located on the ground with reference to the cedar stake?

" 'Answer by stating the distance.'

"The jury answered this issue: '5511 varas.'

" 'Special Issue No. Twelve (12). When James Ingalls made his survey on March the 3rd, 1881, beginning on the south side of Taylor's Bayou and ran a line due south 18,150 varas, at what distance did he locate said line west from the west line of the Isaacs survey as now located on the ground with reference to the said cedar stake?

" 'Answer by stating the distance.'

"The jury answered this issue: '4663 varas.'

" 'Special Issue No. Thirteen (13). When James Ingalls made his survey on March the 3rd, 1881, beginning on the south side of Taylor's Bayou and ran a line due south 18,150 varas at what distance did he locate said line west from the southwest corner of the N. Coleman survey as now located on the ground with reference to the west line of the Dennis Gahagan Survey, located as to the said cedar stake?

" 'Answer by stating the distance.'

"The jury answered this issue: '3095 varas.' These questions arose on the following facts:

"Preliminary to making the surveys in controversy Ingalls began far to the north in the Howard and ran a trial line south presumably to determine the boundaries of the vacant land above referred to. In making his report to the Land Office of this work he accompanied it with a map showing the distance his line was supposed to be from the surveys on the east adjoining the Gahagan League. The correct-

ness of these distances as reported by Mr. Ingalls was put in issue and the distances submitted to the jury were for the purpose to determine the location on the ground of this trial line as run by Ingalls. As we have already said, all issues except No. 1 were purely evidentiary and could not be controlling of or affect in the least the trial court's judgment. Judgment was rendered by the trial court in favor of appellees and against appellants, giving to appellee's surveys as named all land in controversy and extinguishing appellants' surveys. From this judgment appellants have prosecuted their appeal to this court on proper assignments of error and propositions. We have carefully examined all the assignments and propositions advanced by appellants, and while we have filed no written opinion, it is our conclusion that all of them should be overruled except the assignments and propositions complaining of the argument to the jury by counsel for appellees. As to the law on this argument we are not in agreement, and because of this disagreement and the importance of the question of law involved, we deem it advisable to certify to Your Honors for adjudication the question of law arising under appellants' assignments and propositions that the argument of appellees' attorney constituted reversible error. As fully reflecting the argument complained of and its relation to the questions of law certified, we quote as follows from appellants' bill of exceptions on this point:

" 'During the course of the argument of plaintiffs' attorney, after the conclusion of the evidence and after said special issue was submitted to the jury, the attorney for the plaintiff, among other things, in his argument, told the jury how to answer said special issue No. 1 in order that the answer might constitute a verdict in favor of the plaintiffs, Broussard and others, the said J. E. Broussard being the real plaintiff in the case, that is, the said counsel for appellees told the jury that if they wanted to render a verdict in behalf of the plaintiffs, to answer said special issue "yes" and thereupon, the defendant's attorney objected to said remarks and argument on the part of the attorney for the plaintiff in instructing the jury the effect of their answers and telling the jury how to answer the question in order to constitute a verdict for the plaintiff, on the ground that said argument is improper and the jury ought to be permitted to answer the questions with reference to the facts in the evidence and not with reference to the effect of their answers, and the court overruled said objection and refused to instruct the jury to disregard said remarks, although requested so to do by the defendant, and there-

upon, the plaintiffs' attorney proceeded to tell the jury how to answer each and all of the other special issues propounded in the court's charge, as shown by the court's charge, and requested the jury to take down the figures which they should give as their answers to the several other special issues, and three of the jury did produce pencil and paper and take down the distances stated by the plaintiff's attorney, which plaintiff's attorney requested them to find in answer to the several other special issues, in order to constitute a verdict for the plaintiff, to which said further remarks defendant's attorneys further objected and requested the court to instruct the jury to disregard the same. The court overruled each and all of the objections of the defendant and refused to instruct the jury to disregard the remarks of plaintiffs' attorney to the jury to the substance and effect that if they wanted to find a verdict for the plaintiff to answer the first question "yes" and as to how to answer each and all of the special issues; to all of which said ruling and action of the court the defendant then and there excepted and here now tenders this his bill of exceptions and prays that the same be approved and filed as a part of the record in this cause, which is accordingly done.'

"The following pertinent statement from the court's qualification to this bill is also given:

" 'Plaintiffs' counsel told the jury how he would like to have Issue No. 1, as well as other issues answered, and that if the jury wanted to find for plaintiff they would answer Issue No. 1 "Yes." Defendant's counsel requested that the Court instruct the jury not to consider Plaintiffs' counsel's request, the Court refused to instruct the Jury, and defendant's counsel excepted, and his bill of exceptions is approved, in connection with this additional statement by the court, and is ordered filed as a part of the record in the case, this June 1, 1926.'

"The other portions of the court's qualification are in no wise pertinent to the question submitted. All questions submitted to the jury were answered by them as instructed by counsel for appellees.

"It took many days to try this case. The record is very voluminous, the statement of facts comprising about 400 pages, with more than 123 exhibits by appellees and more than 100 by appellants. Appellants' brief consists of about 400 pages, and appellees' brief of about 100 pages. It would, of course, be impossible to certify all the facts on the issues submitted to the jury. Therefore, we say that the issues were so complicated, both in fact and in law, that no juror of average intelligence, unskilled in the land

law of Texas, could have known the legal effect of his answers to these questions submitted in this case, except as he was advised of their legal effect by counsel in their argument. The case was fully argued to the jury on the court's charge by counsel for both parties.

"Our doubt as to the law of this argument by counsel for appellees arises from the following proposition announced by the Commission of Appeals in Railway Company v. Harling, 260 S. W., 1016:

" 'We are not to be understood as saying that it would be reversible error for counsel to tell the jury the legal effect of their answer to a specific issue, if the jury did not already know what the legal effect would be.'

"For the reasons given and on the facts stated, we certify to Your Honors the following questions:

## "QUESTION No. 1.

"Was it reversible error for appellees' counsel to tell the jury if they wanted to return a verdict in behalf of the plaintiffs to answer said Special Issue No. 1 'Yes'?

## "QUESTION No. 2.

"Was it reversible error for the said counsel for appellees, in presenting the argument for appellees, to tell the jury how to answer each and all of the other special issues propounded in the court's charge and to request the jury to take down the figures which they should give in their answers to the several special issues, and for three of the jurymen to produce pencil and paper and take down the distances stated by appellees' attorney, in accordance with the attorney's request and advice to them that such answers must be returned 'in order to constitute a verdict for the plaintiff' ?"

### OPINION.

In order to properly answer the questions certified it is necessary and proper to correctly interpret and construe Articles 2184 and 2189, Revised Civil Statutes of Texas, 1925. It will be noted that Article 2184 provides two methods of submitting civil cases to the jury, viz.: by general charge and on special issues.

When the case is submitted on a general charge it is the duty of the court to deliver to the jury a written charge on the law of the case, and it is the province and duty of the jury to apply the facts, permitted to go before them under the rulings of the court, to the law as given them in the charge of the court, and directly and concretely decide by their verdict who shall prevail in the suit. On the

other hand, when a case is submitted on special issues, it is the duty of the court to submit each issue of fact distinctly and separately. It is the duty of the jury to answer each issue distinctly and separately. In submitting a case on special issues, the court is prohibited from giving a general charge, and is limited in his instructions to giving the jury such explanations and definitions of legal terms as are necessary to enable the jury to properly pass upon and render a verdict on the issue submitted.

Certainly the legislature of the state had a purpose in providing by express statute for the submission of cases on special issues, and if that purpose can be ascertained, it is the duty of the courts to give effect to the legislative purpose. If the jury is allowed to answer the questions according to a prearranged plan as to who shall prevail in the suit when a case is submitted on special issues, then we are unable to conceive of any purpose in the law providing for so submitting civil cases.

Clearly, the prime object, purpose, and intent of the law for submitting cases on special issues is to remove the jury from any bias in favor of, or prejudice against, either party to the suit, to relieve them from the duty of directly passing on who shall prevail in the suit, and to make it the duty of the jury to answer each question truly as they find the facts to be from the evidence, without regard to what the result of their answers may be. If the court or the attorney, or anyone else, is allowed to tell the jury the legal result of the answers, and to appeal to them in argument to so frame their answers so as to accomplish a result rather than to answer the issues truly as they find the facts to be from the evidence, or if the jury is permitted to agree on the result, and then designedly form the answers to accomplish such result, the law providing for special issue verdicts would be an idle and vain thing.

The Court of Civil Appeals states in the certificate that the doubt of that court arises from the following proposition announced by the Commission of Appeals in Railway Company v. Harling, 260 S. W., 1016:

*"We are not to be understood as saying that it would be reversible error for counsel to tell the jury the legal effect of their answer to a specific issue, if the jury did not already know what the legal effect would be, for it is not necessary to determine that matter in this case."*

A careful reading of Judge Chapman's opinion in the Harling case, supra, will show that he merely held that when the special issues

submitted are such that men of ordinary intelligence would be presumed to know the legal effect of their answers, no injury could result by counsel telling them something they already know. This holding was then, and still is, the law of this state. However, in a case like the one at bar, when the issues are such that ordinary men are not presumed to know the legal effect of the answers, then the argument of counsel telling them the legal effect of such answers, coupled with the other circumstances, would, as a matter of law, probably result in injury to the opposite side, and is reversible error. In using the language quoted, Judge Chapman expressly declined to pass on the question which we are now passing on in the case at bar.

The courts of this state have repeatedly held that it is error for the jury to first determine whom they want to prevail in the suit and then designedly form their answers to special issues to accomplish that result. Seale v. Schultz (Civ. App.), 3 S. W. (2d), 563; Conlisk v. Bender (Civ. App.), 245 S. W., 941; G. C. & S. F. Ry. Co. v. Harvey (Com. App.), 276 S. W., 895; Patterson v. Bushong (Civ. App.), 196 S. W., 962.

In Wichita Valley Railway Co. et al. v. Southern Casualty Co. (Com. App.), 284 S. W., 940, which is expressly approved by the Supreme Court, it is shown that the jury delivered the verdict on special issues to the court, and the court read the same over in the presence of the jury, and stated in the presence and hearing of the jury that their answer to a certain issue would cause the attorney for the defendant some worry. Upon hearing this remark, some of the jurors requested that they be permitted to return to the jury room and change their answer. The jury had answered a certain special issue in the affirmative. The court granted the request of the jury and they returned to the jury room and changed their answer to this issue, answering same in the negative. This was excepted to by the plaintiff. In passing on this matter, Judge Bishop, of the Commission, says:

"The Court of Civil Appeals in its opinion stated that—

" 'There can be no question but that the information furnished the jury caused them to alter their verdict upon the issue in question, and was a grave error for the trial court to have communicated the information to the jury that he did communicate to them.'

"With this statement we agree. The remark was unwarranted, and should not have been made. The finding made by the jury on this issue was in conflict with the findings on the issue of negligence on the part of plaintiffs in error. While the court should have called

the jury's attention to the fact that the findings were in conflict and permitted them to retire and further consider their verdict, having in view the elimination of the conflict, in doing so, the judge of the court should not have indicated that the verdict as returned might cause the attorney for one of the litigants worry. This remark was calculated to cause the jury to eliminate the worry, though it was the conflict and not the worry which should have been eliminated. Neither the judge of the court nor the jury should have been concerned with the worry. The verdict as finally returned into court was obtained by unfair means, and no verdict so obtained should be allowed to stand. Fairness is essential in the trial of all cases."

The above case is clearly authority for the proposition that it is proper for the court to refuse to receive a verdict on special issues that is conflicting; but that it is highly improper and unfair, where there is a conflict shown, to tell the jury who will be *worried* or injured. This case is further clearly authority for the proposition that it is highly improper for the court to indicate to the jury the legal result of their answers to special issues.

In Humble Oil & Refining Co. v. McLean (Com. App.), 280 S. W., 557, Judge Harvey of the Commission clearly holds that it is error for the court to tell the jury the legal effect of the answer to a special issue, by using the following language in the opinion:

"The jury gave an affirmative answer to the special issue quoted above. The suggestive nature of the court's preliminary charge, as illustrated by the extracts given, is obvious. Not only are the jury told of the legal effect of their answer to the special issue, but the matters set forth are given such undue prominence that we cannot say that no harm resulted to plaintiff in error."

The holding in this case is also expressly approved by the Supreme Court.

We therefore conclude that since it is undoubtedly error for the jury to first agree on the result they wish to accomplish by their answers, and then designedly frame said answers so as to accomplish such result, it is reversible error for an attorney to make an argument to the jury which is calculated to cause them to do the very thing that the law prohibits. In the case at bar we are convinced that the argument set forth in the certificate of the Court of Civil Appeals, though made in good faith, was calculated to cause the jury to disregard their obligations as jurors to answer each question separately, truly and distinctly, and amounted in law to an appeal to

the jury to designedly agree on a result and so form their answers as to accomplish such result.

It follows from what we have said that we are of the opinion that the argument complained of and herein certified amounted to such a denial of the rights of appellant, as, under the circumstances of this case, are reasonably calculated to injure, and probably did injure him.

We therefore recommend that question No. 1 be answered in the affirmative. Our answer to question No. 1 makes it unnecessary to answer question No. 2.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.