## HOUSTON ELECTRIC CO. v. DE CUIR.
### No. 9916.

Court of Civil Appeals of Texas. Galveston.
Jan. 31, 1934.

Rehearing Denied Feb. 22, 1934.

Baker, Botts, Andrews & Wharton, Gaius G. Gannon, and Dillon Anderson, all of Houston, for appellant.

J. W. Lockett, of Houston, for appellee.

GRAVES, Justice.

The Electric Company appeals from a $2,-500 judgment against it in favor of the ap-pellee, entered in response to a jury's verdict on special issues whereby they found he had suffered that much in damages as the result of personal injuries inflicted upon him by a collision between his automobile and the ap-pellant's bus at the junction of Caroline and Wheeler streets in the city of Houston, caus-ed through the negligence of the bus driver in several particulars; there are no assign-ments to the effect that this verdict in any respect either lacks support in or is against the great weight of the evidence, unless one to the effect that it is excessive in amount is meant to be of that character.

The attack upon the judgment is wholly grounded upon the contentions: First, that the jury in its consideration leading to the rendition of the verdict was guilty of such misconduct as vitiated it. Second, that the trial court erred in these further particulars: (1) in refusing to submit appellant's request-ed special issues relating to the claimed con-tributory negligence of the appellee; (2) in failing to give a proper specific charge on the burden of proof with regard to the issue of unavoidable accident; (3) in refusing to ex-clude from the jury's consideration, on re-quest, as elements of damage certain alleged disabilities in hearing and eyesight of the ap-pellee; (4) in instructing the jury to allow appellee damages for "physical pain" and "mental suffering," in the absence of a prop-er definition of these legal terms; (5) in per-mitting the amount of the award to stand, over the objection that it was excessive, the appellee having had only four fractured ribs and sundry bruises, from which he recovered normally and returned to work the month following his injury.

In view of the decision made by this court through a majority holding (this member dis-senting), to reverse the judgment solely on account of its conclusion that the jury mis-conduct charged did occur, it would be a work of supererogation to discuss at length

these various other assignments presented, since the matters therein complained of may not so arise upon another trial, and since a majority further hold that none of them present prejudicial error in the state of the present record. In this connection, however, it is proper to state that the Chief Justice does not acquiesce in the particular holding that the special issues requested by appellant seeking to elicit findings on whether or not the appellee was guilty of contributory negligence in the way he approached and entered upon the intersection of the streets should not have been given; he concluding that they should have been submitted.

The gravamen of the misconduct charge was that on one or more occasions by one or more of the jurors it was stated in the presence of all the others during their deliberations that in order for the plaintiff to recover anything at all against the defendant it would be necessary for the jury to find that he was not guilty of negligence in any of the respects inquired about in the main charge of the court; there being no charge of fraud, dishonesty, collusion, nor bribery made.

The learned trial court, on hearing the motion, went painstakingly and fully into an investigation of all that occurred concerning the matter, hearing in much detail the testimony of six of the jurors who returned the verdict, overruling it in this order:

"And the Court, after having heard the testimony of said jurors, found that there was no misconduct, and at the request of the defendant the Court finds and files the following findings of fact:

"1. The Court finds that the jury after retirement and before they undertook to answer any issue of contributory negligence on the part of the plaintiff, determined and decided that they would find a verdict for the plaintiff for some amount, such amount being at that time left open and undetermined. That during the time the jurors were discussing the issue as to the contributory negligence of plaintiff, one or more of the jurors stated that the plaintiff could not recover if the jury found that the plaintiff was guilty of contributory negligence. That the first ballot on the question of plaintiff's contributory negligence resulted in a vote of nine in favor of finding him not guilty of contributory negligence and three in favor of finding him guilty of contributory negligence. That the issue as to whether the plaintiff was guilty of contributory negligence was at that time and after some discussion answered to the effect that the plaintiff was not guilty of

contributory negligence, and such answer to such issue was written in pencil upon the sheet which the jurors used in answering the special issues. That the jury thereupon left the courthouse in charge of the sheriff, going to supper, and after coming from supper again voted on the question of plaintiff's contributory negligence and determined the plaintiff was not guilty of contributory negligence and wrote their answer to such special issue in ink.

"2. The Court finds that the discussion of the jurors as to the effect of the plaintiff being guilty of contributory negligence had no influence or effect in changing the three members of the jury who were at first in favor of finding him guilty of contributory negligence, such jurors having changed their opinion after a consideration of the evidence.

"The Court is of the opinion, therefore, that such discussion on the effect of plaintiff's contributory negligence, if any, did not influence the jury in arriving at their verdict, and is not misconduct, to which findings the defendant and plaintiff excepted."

By a subsequent order, a request of appellant for these additional findings was denied: "The jurors were unable to agree upon the proper answer to be made to the special issues bearing upon plaintiff's contributory negligence until after the statement by one or more of the jurors that the plaintiff could not recover anything if the jury found he was guilty of contributory negligence."

The findings thus made below are thought by the full court here to have been supported by the testimony heard, the ultimate gist of which likewise appears to be fairly presented in this summary thereof in appellee's brief:

"The juror T. A. Legate testified that when they came to the question of whether or not DeCuir had been negligent some wanted to say he was not negligent and some wanted to say that he was. That if he was negligent, they could not say both were negligent. That he did not remember whether any juror said what would be the effect if they found him guilty of negligence. That we did not feel like he was negligent. The juror was asked if there was any misunderstanding as a result of any remark made by one of the jurors if you did answer that he was negligent that would prevent him from getting anything, or did you have such an understanding or was such a remark made. The juror answered, I do not recall whether there was or not; we read the charge and got over that item all right, we were stuck several

hours and could not come to that agreement and we put it down in pencil form so we could change it later provided we saw fit. It was decided at that time that everybody wanted to see him get some amount. After that the question was answered that he was not negligent. We never did agree he was negligent. We finally decided he was not negligent. We came down to the charge and we agreed he was not negligent. We agreed that accident happened by the negligence of the bus driver. We agreed among ourselves we wanted him to have something before we could agree if he was negligent or not. We answered each question as we came to it. We answered the question that Mr. DeCuir was not negligent before we decided on any amount. It was decided if we found he was negligent anywhere we could not give him anything. We decided he was not negligent before that. We all decided he was not negligent before that was mentioned. We figured the bus driver was going too fast and he was negligent, and the next question was whether or not Mr. DeCuir was negligent for not failing to stop or for failing to stop, and at that time we hitched up, and could not agree, because we felt both were not negligent, and he was entitled to some damages. We finally agreed he was not negligent before we went to another question. We never had agreed that Mr. DeCuir was negligent, but we spoke about it. We felt that the negligence of the street car company was what caused the accident and injury, otherwise we would not have given him anything.

"Juror Louis George was asked if he recalled whether it was pointed out by some juror in order for plaintiff to recover they would have to answer the question of his negligence that he was not negligent, and whether he recalled anybody saying when they got to the issue of Mr. DeCuir's negligence that you would have to find he was not negligent or he could not get anything out of the case, and he answered that something was mentioned to that effect, I do not remember exactly what was said or who said it. That when they first got down to the issue when the first vote was taken there was nine that he was not negligent and three that he was. There was some dispute on that issue before we took a vote on whether or not he should have anything. After the vote was taken we voted he was not negligent. He was asked if you found him guilty of negligence that would cut him off? He answered, No, not that, I think it was in the evidence what caused us to vote that way. Everybody voted that he was entitled to some amount. That was before we answered the issue whether he himself was guilty of negligence or not. The jury did not take a vote or anything except what was in the charge. We took a vote as to whether he was entitled to damages. We voted unanimously that Houston Electric Company was negligent. We wrote our answers to each issue as we went down the line. On the issue as to whether Mr. DeCuir was negligent, we took a vote. The vote was nine to three, nine that he was not and three that he was. We had a discussion about it and voted again and twelve voted he was not negligent. We voted on whether we would give him damages or not. Q. Do you mean at the end of the issues how much he was damaged? A. Yes, sir. Q. In talking among each other you had decided among yourselves that the Houston Electric Company was negligent? A. Yes, sir. Q. And you thought Mr. DeCuir was not negligent, and you agreed to that before you answered any question? A. That is what we agreed to. Q. Did you base your verdict on any conversation in the jury room or on the evidence in the court room? A. From the evidence I heard. Q. Did the conversation in the jury room have any influence on your verdict? A. Not a bit in the world. Q. How did you take a vote on what you were going to allow? A. The question arose whether we would give him any damages. Q. When did that arise, before you answered any issue, or had you answered any of them? A. After we had answered all but the last one. Q. You finally took a vote and gave him $2500.00? A. Yes, sir. Q. How did you happen to vote whether he was to get anything, there was no issue on that? A. We wanted to arrive at some amount whether he was to get anything at all, there had not been any amount set. Q. You took that vote in connection and just before you voted on the amount? A. Yes, sir. Q. You took a vote whether you wanted to give him anything, was that a vote or just an agreement? A. It was just a discussion. Q. After you voted, after you took the first vote on number 15, whether he was negligent, and you voted nine that he was not negligent, and three that he was, you had a discussion, and that discussion is what you mean when you say you voted you wanted to give him something? A. It was a discussion. Q. You decided among yourselves you wanted to give him something? A. Yes, sir. Q. And the other three also voted he was not negligent? A. After that. Q. There was not any votes taken, but you wanted to give

him something? A. It was not an official vote like we had taken on the other issues.

"Juror George Courtney testified that the jury took up each issue in the order that they came and answered those issues. There was only one issue we had to argue on, or talked about any length of time, was about negligence in entering the street. He was asked whether they took more than one vote on whether plaintiff was negligent and he said the first time I understood it to be ten that he was not negligent and two that he was. We voted by raising our hands. It was asked: Had you all agreed in the beginning that the Houston Electric Company was negligent, and that was the cause of the injury, and he answered: No, not particularly, except that all voted the same way unanimously. Q. Had you all agreed or voted the plaintiff was not negligent? A. Yes, when we finally finished up we were all of the same opinion. Q. You all agreed on that unanimously? A. Yes, sir. The whole jury agreed the plaintiff was not negligent. Q. There was some discussion somebody mentioned that he was negligent, that if he was he could not get anything? A. I believe that was mentioned. Q. Was there any agreement of the jury on account of that? A. No, sir, I do not think there was any agreement.

"Juror H. A. Flaig, foreman of the jury, testified that they read the first issue and answered that and deliberated on that and when we reached the agreement we went on to the second and so on until we finished all of them. There were two issues we had some delay in answering. We put down the answers first in pencil and came back later on and argued and discussed them freely and came back and put them down in pen and ink. We gave the same answers. Several votes were taken. They all agreed on it then, some of them had doubts whether he had stopped there or not when he got to the intersection, and after they reviewed the evidence on that, they switched over the other way. Q. Was there any agreement among the jurors that even if you agreed that Mr. DeCuir was negligent and his own negligence caused the injury that nevertheless you would return the verdict contrary to that, finding that he was not negligent, so he could get some verdict, did you agree on that? A. No, sir. We had some discussion as to whether the Houston Electric Company was negligent. All of the votes were unanimous but we had a discussion. Q. Was there any agreement among the jurors, among all the jurors that those three should change their opinion

to give him something even though he was negligent? A. No, sir, there was no agreement like that.

"Juror J. O. Gentry was asked if there was any agreement among the jurors that they would find DeCuir was not negligent, even though they thought he was, or make that finding so they thought he could get a verdict, and he answered: Not that I know of. He testified that there was no vote taken. That he does not think any of the jury ever voted Mr. DeCuir was ever guilty of negligence in any respect in any issue.

"Juror E. E. Stokes testified that when we first went into the jury room we elected a foreman and he read the charge completely through and we had some discussion as we went through, but took no vote, and went back and started at number one and proceeded on through. We had quite a bit of discussion particularly on the negligence of the plaintiff DeCuir.

"We had a discussion on several. Some had difficulty on how they wanted to answer them and we argued pretty near every question but did not come to a definite disagreement until we came to this question and the jury had quite an argument on that. I do not recall any definite vote taken until we reconciled ourselves. As I recall there was three, I was one that held out that I believed that Mr. DeCuir was negligent, and we argued, I guess for a couple of hours, we went into it as fully as we could, finally I changed my vote because we went back to the interpretation of negligence which meant want of ordinary care, and the other jurors practically convinced me that I was expecting more than ordinary care, and I amended my vote because I thought perhaps I was expecting more than ordinary care; in other words, I thought Mr. DeCuir possibly had been negligent according to my standard, but according to the interpretation of the court's charge and what the other jurors felt about it, I thought possibly maybe I was expecting too much and amended my verdict. We talked until we finally agreed, practically all of us. we called for a vote and it was unanimous. There was no agreement, I believe I made the remark while we were deliberating on it that I wanted this question thoroughly gone into, that the question in my mind, I thought if I could not be satisfied in my own mind that DeCuir had not been negligent, I did not think he had a right to any recovery, and I wanted this question thoroughly settled before we passed on it because it would have all the effect in my mind on voting on the

question. I did not base my verdict on anything other than the evidence and the charge of the court. I felt I wanted to be absolutely sure in my own mind from the evidence that DeCuir was careful, because I felt like if he was not I could not give him anything. Q. Do you recall the jury agreed they thought that he ought to have something? A. I do not remember any agreement on that, when we first read the charge we all felt De-Cuir had established his case. Q. After you got down to special issue number 15 don't you recall there was a discussion and they got an expression of opinion from everybody that everybody wanted him to get something? A. No, I was not in that frame of mind."

To the majority of this court the vice in the refusal of a new trial inheres in the findings themselves, in that the facts therein recited on sufficient evidence affirmatively disclose that there was misconduct as a matter of law—the statement of one or more jurors to the others that plaintiff could not recover if they found him guilty of contributory negligence having been made, which left it at least reasonably doubtful whether that influenced some one of them in rendering their verdict—under such authorities in Texas as these: McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213; Simmonds v. St. L., B. & M. Ry. Co. (Tex. Com. App.) 29 S.W.(2d) 989; Gulf, C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 278 S. W. 839; Walker v. Q. A. & P. Ry. Co. (Tex. Civ. App.) 41 S.W.(2d) 534; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Bradshaw v. Abrams (Tex. Com. App.) 24 S. W.(2d) 372; Casstevens v. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 73 A. L. R. 89.

The pith of the dissenting view, on the other hand, is:

That this cause on its facts presents the legal equivalent of that very recently disposed of by our Supreme Court on certified question in Monkey Grip Rubber Company v. Walton, 53 S.W.(2d) 770, where the Cole Case (Tex. Com. App.) 14 S.W.(2d) 1024, Id. (Tex. Com. App.) 16 S.W.(2d) 534, and Bradshaw, Casstevens, Simmonds, and Harvey Cases, et id genus omne, cited supra, were in effect distinguished; that nothing further of substance occurred here than in that cause—where, along with the other things considered, the subject of insurance was brought up and discussed, as against the mention in this of the

effect of a finding of contributory negligence. In both, however, the final effect of the whole testimony, whatever that first given imported, being to negative the occurrence of any actual misconduct, as this trial judge—in the exercise of the same authority as had a jury on original trial—expressly found. St. Louis, B. & M. Ry. Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024, and Id. (Tex. Com. App.) 16 S.W.(2d) 534. In other words, that this statement of facts as an entirety discloses: (1) Nothing more than a procedural inadvertence if that much on the jury's part; (2) the removal of all reasonable doubt as to its having resulted in the prejudice of the appellant, especially by the obviously satisfactory explanation of the juror Stokes—one of the three who at first had thought the appellee negligent—that it had been caused by a misapprehension of the court's charge as to the degree of care required. Further authorities supporting these individual conclusions are: Scottino v. Ledbetter (Tex. Civ. App.) 56 S.W. (2d) 282; Dallas Ry. & Terminal Co. v. Garner (Tex. Com. App.) 63 S.W.(2d) 542; Schoenfeld v. DePuy (Tex. Civ. App.) 58 S.W. (2d) 574, writ of error dismissed for want of jurisdiction; Earnhardt Co. v. Ray (Tex. Civ. App.) 51 S.W.(2d) 732; Barton v. Green (Tex. Civ. App.) 62 S.W.(2d) 193, writ of error dismissed for want of jurisdiction; Wolfe & Co. v. Ry. Co. (Tex. Civ. App.) 144 S. W. 347, writ of error refused; Armstrong Co. v. Clem (Tex. Civ. App.) 151 S. W. 576, writ of error refused; International & G. N. R. R. Co. v. Jones (Tex. Civ. App.) 175 S. W. 488, writ of error refused; Weatherford Ry. Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822, writ of error refused; James A. Dick Co. v. Yanez (Tex. Civ. App.) 55 S.W.(2d) 600, writ of error refused; Texas & P. Ry. Co. v. Foster (Tex. Civ. App.) 58 S.W.(2d) 557, writ of error dismissed.

Wherefore, in the phrase of the late Chief Justice Key, of Austin, it would seem to amount to "the parsing of the appellee out of court" to deprive him of this verdict on nothing more substantial.

The judgment has been reversed, and the cause remanded.

Reversed and remanded.

GRAVES, J., dissenting.