### TEXAS INDEMNITY INS. CO. v. MONTGOMERY et al.

### No. 2962.

Court of Civil Appeals of Texas. Beaumont.

Dec. 31, 1936.

Rehearing Denied Jan. 20, 1937.

Orgain, Carroll & Bell, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, and Robert Lee Guthrie, of Dallas, for appellees.

COMBS, Justice.

. This suit was instituted by Bessie May Montgomery, widow of Claude E. Montgomery, against the Texas Indemnity Insurance Company, compensation insurance carrier for the Atlantic Pipeline Company. After the filing of the suit Paul A. Montgomery, minor son of Claude E. Montgomery, intervened through Bessie May Montgomery, his mother, as next friend. It was a suit to set aside an award of the Industrial Accident Board, before which Bessie May Montgomery and Paul A. Montgomery had claimed compensation insurance on account of the death of said Claude E. Montgomery. The plaintiffs alleged that Claude E. Montgomery, on the 28th of December, 1931, was an employee of the Atlantic Pipeline Company, of which the Texas Indemnity Insurance Company was the compensation insurance carrier, and that on said day and in the course of his employment, while performing his duties as nightwatchman for said company, he inhaled poisonous gas fumes, which caused his death. Compensation was sought in the amount of 60 per cent. of the average weekly wages of the deceased for a period of 360 weeks in a lump sum, which amount, less the discount for present payment, was alleged to be $6,814. Before the trial, Susie Montgomery, mother-in-law of Bessie May Montgomery, intervened in the suit claiming that she had paid the funeral expenses of said Claude E. Montgomery in the amount of $250, and asked that she be reimbursed in that amount out of any recovery in the suit. Defendant's answer was by general demurrer and general denial.

It was shown that the deceased, Claude E. Montgomery, a man 24 years of age, was employed as a night watchman by

the Atlantic Pipeline Company, his hours of work being from 6 in the evening until 6 in the morning. He was the only night watchman employed by the company and his duties were to answer the telephone, punch clocks, and generally to watch over the pumping plant and premises of the pump station and tank farm. It was testified that he was to make three rounds or inspection tours of the property each night, one about 9 p. m., one at midnight, and one at 3 a. m. John Moore, line walker for the pipeline company, testified that he found the body of Montgomery at about 3:50 a. m. on the morning of December 28, 1931, at the manhole of one of the tanks, referred to as tank 404; that the body was crouched down on one knee with an arm hanging down inside the manhole of the tank. It is shown that the gasoline had been pumped out of said tank on December 25th, and that the manhole lid had been left off in order that the fumes might escape and prevent the accumulation of gas which might cause an explosion. The bottom of the tank being uneven, it was shown that it was not possible to pump all of the gasoline out of the tank, and that there remained in the bottom of it one or two inches of gasoline. There seems to be no dispute in the evidence but that Montgomery died as the result of inhaling poisonous gasoline fumes. Dr. B. H. Davidson, who was called and made an examination of the body and of the surroundings at the place where it was found, so testified. It was the defendant's theory, and upon that theory its whole defense is based, that Montgomery, at the time of his death, had turned aside from his duties as a night watchman and was engaged in stealing gasoline from the bottom of the tank for the purpose of carrying it to his automobile, which was parked some distance away on the Shell road. Much testimony was elicited tending substantially to support its theory of the case. At the conclusion of the evidence defendant moved for an instructed verdict on the theory that the evidence established conclusively, and as a matter of law, its theory of the case. The motion was overruled and the case submitted to the jury on special issues, in response to which the jury found: (1) That the death of Claude E. Montgomery resulted from a personal injury; (2) that such personal injury was sustained by him in the course of his employment; (3) that his death was accidental; (4) that mani-

fest hardship and injustice will result to the plaintiff Bessie May Montgomery in the event compensation is not paid her in a lump sum; (5) that manifest hardship will result to plaintiff Paul A. Montgomery in the event compensation is not paid to him in a lump sum; and (6) that the deceased, Claude E. Montgomery, was not engaged in the act of taking gasoline from tank 404 at the time of his death.

Upon the findings of the jury the trial court entered judgment in favor of the plaintiffs, as prayed for, except that compensation was not allowed the minor Paul A. Montgomery in a lump sum.

### Opinion.

The appellant strenuously insists that the trial court should have sustained its motion for an instructed verdict and that this court should reverse and render judgment in its favor on the ground that the evidence failed to establish that the deceased came to his death while in the course of his employment, and, further, that the evidence conclusively and as a matter of law, established that at the time of his death he had turned aside from his employment as a night watchman and was engaged in appropriating his employer's gasoline.

We have made a very careful study of the evidence in this case and conclude that under the evidence there was an issue of fact for the jury as to whether or not Montgomery came to his death in the regular course of his employment. In view of the fact that this case must be reversed and remanded for a new trial on the grounds discussed below, it would not be proper for us to here review the testimony. Suffice it to say that the evidence was such that it would have sustained a finding of the jury to the effect that Montgomery did not receive his injury in the course of his employment. However, the evidence was wholly circumstantial. There were no eyewitnesses. It is shown that Montgomery had been a faithful employee. His reputation was good. The testimony of the witnesses does not harmonize in all respects, and it was for the jury to weigh various facts and circumstances in evidence, and determine from them whether Montgomery met his death in the line of duty. In 17 Tex.Jur. 908, it is stated that "the circumstances which amount to sufficient proof of a disputed fact can never be a matter of general definition;

and the only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of the jury. The jurors are the exclusive judges of the dispute as to whether a fact has been established by the circumstances in evidence." And while we, of course, do not mean to say that in no case can circumstantial evidence establish a fact conclusively, the quotation above from Texas Jurisprudence does, we think, state the general rule. In the case before us it is our view that the circumstances in evidence are not of such conclusive character as would authorize a court to deny recovery as a matter of law by assuming, as an uncontroverted fact, that the deceased met his death while engaged in an unlawful enterprise, thereby imputing to him a criminal act wholly inconsistent with his reputation and prior conduct.

█ Appellants complain of the following improper argument of counsel: "It is also perfectly plain, notwithstanding they try to soften it up and smear it over and veneer it somewhat, that the only way this insurance company can win this case is for this jury to convict this deceased father and husband of theft, and let it stand in the records of this court room, this court house, for all eternity, that the father of this little boy and the husband of this good woman was engaged in petty theft, in the act of stealing thirty cents worth of trashy gasoline, at the time he met his death. We can't escape that." There are also other instances of alleged improper argument which are made the basis of assignments. That the above argument on the part of plaintiffs' counsel constitutes reversible error under the recent holdings of our courts is, we think, beyond question. For one thing, the argument to the effect that the only way the Insurance Company could win the case was for the jury to convict the deceased father and husband of theft clearly had reference to the issue submitted to the jury as to whether or not the deceased was engaged in taking gasoline from the tank at the time he met his death. It, in effect, told the jury that if in response to that issue it should be found that the deceased was so engaged, a recovery would be defeated. Such argument has been repeatedly condemned by our courts. See McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213; Fidelity Union Casualty Co. v. Cary (Tex.Com.App.) 25 S.W.(2d)

302; Bankers' Life Ins. Co. v. Butler (Tex.Civ.App.) 73 S.W.(2d) 664.

The appellee has presented two cross-assignments which we do not deem it necessary to discuss in view of the fact that this case is being remanded for another trial, as they will probably not arise again.

For the reasons above discussed, the judgment of the trial court is reversed, and this cause is remanded for a new trial.