**H.E. BUTT GROCERY COMPANY,**
Petitioner,

v.

Vinnie BILOTTO, Respondent.

No. 96–0995.

Supreme Court of Texas.

Argued March 4, 1998.

Decided July 14, 1998.

Wade B. Shelton, Wallace B. Jefferson, Sunny J. Jansma, San Antonio, for Petitioner.

Les Mendelsohn, Ricky J. Poole, San Antonio, for Respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ and ABBOTT, Justices, and LINDA THOMAS, Justice (Assigned),[1] joined.

The issue in this cause is whether a jury charge instruction predicating a damages question on a finding of fifty percent or less comparative negligence violates Rule 277 of the Texas Rules of Civil Procedure. The trial court submitted the jury instruction

---

1.  JUSTICE LINDA THOMAS, Chief Justice of the Court of Appeals for the Fifth District of Texas at Dallas, sitting by special appointment under TEX. GOV'T CODE § 22.005.

over HEB's objection and the jury found HEB and Bilotto each were fifty percent negligent. The court of appeals affirmed. 928 S.W.2d 197. We now affirm the judgment of the court of appeals.

Vinnie Bilotto suffered back injuries when he slipped and fell in an H.E. Butt Grocery Company (HEB) store. He sued HEB for negligence and gross negligence. The case was tried to a jury. Before the trial court charged the jury, HEB objected to a proposed instruction given after jury question number two. Question one read as follows:

Did the negligence, if any, of the persons named below proximately cause the occurrence in question?

Answer "YES" or "NO" for each of the following:

(a) H.E. BUTT GROCERY COMPANY ———

(b) VINNIE BILOTTO ———

The jury answered "YES" for both HEB and Bilotto. Question two then asked the jury:

What percentage of the negligence that caused the occurrence in question do you find to be attributable to each of those found by you, in your answer to Question No. 1, to have been negligent?

(a) H.E. BUTT GROCERY COMPANY ———

(b) VINNIE BILOTTO ———

The jury found both HEB and Bilotto fifty percent negligent. The instruction that followed question two, which is nearly identical to Texas Pattern Jury Charge 80.1,[2] read:

If, in answer to Question No. 1, you have answered "NO" for VINNIE BILOTTO, or if, in answer to Question No. 2 you have found that 50 percent or less of the negligence that caused the occurrence is attributable to VINNIE BILOTTO, then answer Question No. 3. Otherwise, do not answer Question No. 3.

Question three then asked the jury to assess the damages, if any, that would reasonably compensate Bilotto.

HEB objected that the instruction after question two impermissibly informed the jury of the legal effect of its answer. The trial court overruled the objection and then instructed the jury. The jury found that HEB and Bilotto were each fifty percent negligent and awarded Bilotto damages. The issue we must resolve is whether the trial court erred in submitting the jury instruction.

■ The trial court is given wide latitude to determine the propriety of explanatory instructions and definitions. *See Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex. 1974). We hold that the trial court did not err in giving this instruction.

We adopted Rule 277 in 1941. Tex.R. Civ. P. 277 (3 Tex. B.J. 566 (1940)). At the time, Texas courts were required by statute to submit the jury charge using special issues. *See* William V. Dorsaneo, III, *Broad-Form Submission of Jury Questions and the Standard of Review*, 46 SMU L.Rev. 601, 606–07 (1992). Over the years, however, it became apparent that this special-issue approach had overloaded the charge with "granulated issues" and had led to more and more reversals on appeal. *Id.* at 607–08. As a result of these problems, in 1973 we amended Rule 277 to permit the broad-form submission of jury questions. Tex.R. Civ. P. 277 (493–494 S.W.2d (Tex.Cases) xxxi, xxxii-xxxiii).

In 1987, we again amended Rule 277 and made the broad-form submission of the jury charge mandatory. More importantly for this case, we also added language indicating that "[t]he court may predicate the damage question or questions upon affirmative findings of liability." Tex.R. Civ. P. 277. This language determines the outcome of this dispute.

■ In response to question one, the jury determined that both HEB and Bilotto proximately caused Bilotto's injuries. In question two, the jury found that each party was fifty

---

**2.** Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—Malpractice, Premises & Products PJC 80.1 (1997).

percent negligent. Because the jury found Bilotto only fifty percent negligent, in light of our comparative negligence law, the effect of the jury's answer to question two was to establish HEB's liability. The instruction that followed question two predicated the damages question on the affirmative finding of HEB's liability found in question two. The 1987 amendment to Rule 277 expressly authorizes such a conditional submission. Therefore, because this instruction is expressly authorized by Rule 277, the court did not err in giving the instruction. *See Borden, Inc. v. Price,* 939 S.W.2d 247, 254 (Tex. App.—Amarillo 1997, writ denied).

HEB nevertheless contends that the instruction was improper because it informed the jury of the legal effect of its answers. However, Rule 277 states that "[t]he court's charge shall not be objectionable on the ground that it *incidentally* constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition." *Id.* (emphasis added). Thus, following the Rule, the court's charge was not objectionable on the grounds HEB asserts if it only *incidentally* informed the jury of the legal effect of its answers.

Initially, we note that the clear trend among states that have considered the issue is to permit the jury to know the ultimate effect of its answers. *See Wheeler v. Bagley,* 254 Neb. 232, 575 N.W.2d 616, 619 (1998) (discussing and collecting cases on the "strong, if not overwhelming, recent trend" toward informing the jury). Nevertheless, when an instruction merely directs the jury to answer a damages question only if some condition or conditions have been met, it does not directly instruct the jury about the legal effect of its answers. *See Borden,* 939 S.W.2d at 254.

To be a direct comment on the weight of the evidence, the issue submitted must suggest to the jury the trial court's opinion on the matter. *See Southmark Management Corp. v. Vick,* 692 S.W.2d 157, 160 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Similarly, to directly advise the jury of the legal effect of its answers, the issue submitted must instruct the jury how

to answer each question in order for the plaintiff or defendant to prevail. *See* Pope & Lowerre, *The State of the Special Verdict—1979,* 11 St. Mary's L.J. 1, 43 (1979). PJC 80.1 does not directly inform the jury of the legal effect of its answers, but merely directs the jury to answer the damages question only if certain conditions are satisfied. Therefore, PJC 80.1 merely incidentally informs the jury of the legal effect of its answers.

HEB argues that our decision in *Grasso v. Cannon Ball Motor Freight Lines,* 125 Tex. 154, 81 S.W.2d 482 (Tex.Com.App. 1935), controls the outcome of this case. In *Grasso,* the trial court instructed the jury:

If, in response to the foregoing question, you have answered that the defendant's truck was operated in a negligent manner, and that such negligence, if any, caused the injury to the plaintiff, and if you have also answered that the plaintiff was not guilty of negligence, contributing to the accident, then you will answer the following question; otherwise, you need not answer the following question.

*Id.* at 487. We held that this instruction impermissibly told the jury "that they must find the defendant guilty of negligence, and the plaintiff not guilty of contributory negligence, in order for the plaintiff to recover." *Id.* We held that "[s]uch a charge is undoubtedly in violation of our special issue statutes." *Id.*

PJC 80.1, albeit logically indistinguishable from the instruction we found impermissible in *Grasso,* does not violate Rule 277. The reason PJC 80.1 is permissible where the *Grasso* instruction was not is that *Grasso* predated the amendments to Rule 277. *See Borden,* 939 S.W.2d at 254.

The effect of our amendments to Rule 277 is that the rule now allows instructions such as the one at issue in *Grasso* and in this case. First, the Rule specifically authorizes courts to condition a damage question on an affirmative finding of liability. Next, this instruction only incidentally informs the jury of the legal effect of its answers. Therefore, it is in line with current Rule 277.

\* \* \*

We do not overrule today the decades of Texas case law that holds that Texas juries cannot be directly informed of the legal effect of their answers. We do hold, however, that because conditional damages jury instructions such as PJC 80.1 are expressly permitted by Rule 277, the trial court did not err in giving the instruction. As a result, this charge is permissible under Rule 277 of the Texas Rules of Civil Procedure. Accordingly, we affirm the judgment of the court of appeals.

GONZALEZ, Justice, filed a concurring opinion.

HECHT, Justice, filed a dissenting opinion, in which OWEN, Justice, joined.

BAKER, Justice, filed a dissenting opinion, in which ENOCH and OWEN, Justices, joined.

HANKINSON, Justice., did not participate in the decision.

GONZALEZ, Justice, concurring.

I agree with the Court that the charge in this case is permissible because it only incidentally informed the jury of the effect of its answers. However, I think it is time to reconsider whether it makes sense to try to keep juries in the dark about the effect of their answers in these cases. When we moved from special issue practice to broad-form submissions, we dramatically reduced the number of cases in which the jury might not know for sure the effect of its answers. In the few remaining cases in which the jury might not know the legal effect of its answers, I question whether it serves the cause of justice to continue blindfolding the jury. I would join the growing number of states that allow the jury to know the legal effect of its answers.

Rule 277 currently directs that a court "shall not ... advise the jury of the effect of their answers," but an otherwise proper charge that incidentally advises the jury is not erroneous. TEX.R. CIV. P. 277. Undoubtedly, the charge in this case told the jury the effect of its answers to the comparative negligence questions. It follows the rec-ommendations of the Texas Pattern Jury Charges and instructs the jury to assess damages only if it finds the plaintiff's negligence was fifty percent or less. Our Court long ago held that a similarly-structured contributory negligence charge contravened the common-law rule in Texas against informing the jury about the effect of its answers. *See Grasso v. Cannon Ball Motor Freight Lines,* 125 Tex. 154, 81 S.W.2d 482, 487 (Tex.Com. App. 1935) (holding that charge which conditioned the damage issue on the jury's answers to contributory negligence issues was a general charge and erroneous because it told the jury what findings were necessary to allow recovery). Both the majority and dissenting opinions recognize that the charge in this case advised the jury about the effect of its answers. The majority opinion holds that such advice was only incidental to a proper charge; the dissenting opinion thinks it was direct. While I agree with the majority opinion, I am concerned that we have not articulated a clear standard so that the bench and bar in future cases can distinguish a charge that directly tells the jury the effect of its answers from one that only incidentally does so. Because such a standard is probably impossible and does not serve the search for justice and truth, we should reexamine whether trying to keep the jury from knowing the legal effect of its charge answers is a worthwhile objective. I conclude it is not, and call for an amendment to Rule 277.

In Texas, the doctrine that jurors should not be informed about the effect of their answers developed in tandem with special issue practice. *See generally* James G. Denton, *Informing a Jury of the Legal Effect of its Answers,* 2 ST. MARY's L.J. 1 (1970). As Justice Denton put it in 1970: "The concept that the jury should not be informed of the legal effect of its answers is one that is peculiar to those jurisdictions that utilize special issues or special interrogatories." *Id.* at 1. Prior to 1913, courts had discretion to submit a case by special issues or by general verdict. *Id.* at 4; *see Mitchell v. Western Union Tel. Co.,* 12 Tex.Civ.App. 262, 33 S.W. 1016, 1020 (1896), *writ ref'd,* 89 Tex. 441, 35 S.W. 4, 6 (1896). However, in 1913, the Legislature enacted a statute which required

submission by special issue upon the request of any party. Act of March 29, 1913, 33rd Leg., R.S., ch. 59, § 1, 1913 Tex. Laws 113 (repealed) (successor rule at Tex.R. Civ. P. 277).

Our Court adopted the rule against informing the jury as necessary to effectuate the legislative intent behind the special issue statute. In the opinion of *McFaddin v. Hebert*, 118 Tex. 314, 15 S.W.2d 213 (Tex.Com. App. 1929), which our Court adopted, the commission of appeals concluded that the special issue statute would be meaningless if the jury could be told the effect of its answers. *Id.* at 216–17. Thus began a long line of cases upholding the rule that juries may not be informed of the effect of their answers. *See, e.g., Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 453 (Tex.1978); *Pittsburg Coca–Cola Bottling Works v. Ponder*, 443 S.W.2d 546, 551 (Tex.1969); *Grasso*, 81 S.W.2d at 487. Ultimately, in 1973, our Court incorporated the common-law rule against informing the jury into the Civil Rules. Tex.R. Civ. P. 277 (1973); Order of Supreme Court of Texas, Adopting Amendments to Rules of Civil Procedure, 493–494 S.W.2d (Texas Cases) XXXI, XXXII–XXXIII (May 25, 1973).

Almost from the beginning, courts recognized the futility of keeping juries from knowing the impact of their answers in most cases. One court noted that jurors of ordinary intelligence probably know more about the effect of their answers than lawyers realize, but upheld the rule because "the line must be drawn somewhere." *Continental Oil Co. v. Barnes*, 97 S.W.2d 494, 497 (Tex. Civ.App.—Fort Worth 1936, writ ref'd). Our Court recognized that a strict rule against telling the jury the effect of its answers ignores reality in most cases. It accordingly limited the rule to the cases in which the effect of answers is not obvious:

> The spirit of our practice of submitting cases on special issues would be violated if jurors were informed either by the court or by counsel of the effect of their answers, but where the effect is so obvious that any juror with ordinary intelligence would know its effect, neither the letter nor the

spirit of the rule is violated by a charge which assumes such knowledge.

*Grieger v. Vega*, 153 Tex. 498, 271 S.W.2d 85, 87 (1954).

By the 1970s, special issue practice had gotten out of hand. The fragmentation of special issues plagued Texas practice with "conflicts, confusion, delays, waste of trial and appellate time, reversals, metaphysics, and the unique system that had developed for trial of personal injury suits." Jack Pope & William G. Lowerre, *The State of the Special Verdict—1979*, 11 St. Mary's L.J. 1, 1–2 (1979). In 1973 and again in 1987, we amended Rule 277 to make broad form the predominant way of submitting a case. Order of Supreme Court of Texas, Adopting Amendments to Rules of Civil Procedure, 493–494 S.W.2d (Texas Cases) XXXI, XXXII–XXXIII (May 25, 1973); Order of Supreme Court of Texas, Adopting Amendments to Rules of Civil Procedure, 725–726 S.W.2d (Texas Cases) XXXIII, LIX–LX (March 10, 1987). Broad form is not quite the same as a general verdict, in that the jury is not told to find generally for one or more of the parties. A submission in broad form typically combines several elements of a ground of recovery or defense into a single question. William Kilgarlin, George (Tex) Quesada & Robin Russell, *Practicing Law in the "New Age": The 1988 Amendments to the Texas Rules of Civil Procedure*, 19 Tex. Tech. L. Rev. 881, 913 (1988). One of the purposes of using broad form is make "questions easier for the jury to comprehend and answer." *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Logically, a jury can more easily figure out the effect of its answers if the submission is broad form rather than granulated issues.

It is doubtful that the rule against telling the jury the effect of its answers was ever very effective. Even in the days of voluminous granulated issues, juries were not fact-finding machines unburdened by knowledge of the effect of their answers. The advent of broad form submission has reduced to a handful the issues in which the application of the law to fact-findings is so intricate that the jury cannot readily figure it out. Moreover, juries determined to disregard instruc-

tions and tailor their answers to their own sense of justice will cause mischief whether they fully understand the effect of their answers or not. Blindfolding such a jury adds randomness but not accuracy to its findings.

The experience of other states seems to bear out the limited effectiveness of blindfolding the jury. Before 1970, virtually every jurisdiction that considered the issue precluded advising juries of the effect of their answers to comparative negligence questions. *See* Price Ainsworth & Mike C. Miller, *Removing the Blindfold: General Verdicts and Letting the Jury Know the Effects of its Answers*, 29 S. Tex. L.Rev. 233, 237 (1987). As the Court notes, however, there seems to be a trend toward letting juries know the effect of their answers. Most jurisdictions that have addressed the issue in the last twenty-five years have moved away from the rule against informing the jury of the legal effect of its answers. *See Loup–Miller v. Brauer & Assocs.-Rocky Mountain, Inc.,* 40 Colo.App. 67, 572 P.2d 845, 847 (1977) (citing Colo.Rev.Stat. § 13–21–111(4)); *Kaeo v. Davis,* 68 Haw. 447, 719 P.2d 387, 396 (1986); *Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683, 687–92 (1978); *Thomas v. Board of Township Trustees,* 224 Kan. 539, 582 P.2d 271, 280 (1978); *Dilaveris v. W.T. Rich Co., Inc.,* 424 Mass. 9, 673 N.E.2d 562, 566 (1996); *Krengel v. Midwest Automatic Photo, Inc.,* 295 Minn. 200, 203 N.W.2d 841, 848 (1973); *DeCelles v. State Dep't of Highways,* 243 Mont. 422, 795 P.2d 419, 420–21 (1990); *Roman v. Mitchell,* 82 N.J. 336, 413 A.2d 322, 327 (1980); *Schabe v. Hampton Bays Union Free Sch. Dist.,* 103 A.D.2d 418, 480 N.Y.S.2d 328, 336–37 (N.Y.A.D. 1984); *Smith v. Gizzi,* 564 P.2d 1009, 1013 (Okla.1977) (Oklahoma utilizes general verdicts); *Peair v. Home Ass'n of Enola Legion No. 751,* 287 Pa.Super. 400, 430 A.2d 665, 671–72 (1981); *McIntyre v. Balentine,* 833 S.W.2d 52, 57 (Tenn. 1992); *Dixon v. Stewart,* 658 P.2d 591, 596 (Utah 1982); *Adkins v. Whitten,* 171 W.Va. 106, 297 S.E.2d 881, 884 (1982). *See also* Ainsworth & Miller, *supra,* at 237–38 ("Today, there is a clear trend, among the comparative negligence states that have considered the issues, to permit the jury to know the ultimate effect of its percentage findings."); Denton, *supra,* at 6 (enunciating the two principal criticisms of this rule: first, jurors generally know the effect of their answers anyway; and second, the fear that a jury may alter an answer if it knows the legal effect is inconsistent with the concept of a fair and impartial jury system).

The reasons for this about-face were expressed by the Idaho Supreme Court in *Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683, 690 (1978):

> It would be incredibly naive to believe that jurors, after having listened attentively to testimony of the parties and a parade of witnesses and after having heard the arguments of counsel, will answer questions ... without giving any thought to the effect those answers will have on the parties and to whether their answers will effectuate a result in accord with their own lay sense of justice. With respect to most questions, the jury would have to be extremely dullwitted not to be able to guess which answers favor which parties. In those instances where the legal effect of their answers is not so obvious, the jurors will nonetheless speculate, often incorrectly, and thus subvert the whole judicial process.
>
> It is this latter problem, juries speculating on the effect of their answers, that creates a unique danger when the issues in a comparative negligence case in Idaho are submitted to a jury....

Further, "jurors are concerned about the effect of their verdicts on the ultimate outcome of the case and the use of a special verdict or special interrogatories does not magically eliminate that well known trait of American juries." *Id.* at 689.

Trying to blindfold the jury belies the realities of trying a case under modern procedure. Good lawyers develop a theory of the case and pick a few themes they hope will resonate with the jury. They try to advance their theory at every opportunity, beginning with the pleadings, through opening statement and voir dire, all during the trial itself, and concluding with the charge and final summation. The whole aim of this exercise is to appeal to the conscious and subconscious mind of the jury. Jurors would not be

human if they did not give some thought to the effect of their answers. Jurors bring their own sense of right and wrong to the task. However, a rule intended to keep jurors from seeking their own vision of justice will not work, even if it were desirable. The criminal courts trust jurors to know the effect of their answers in death penalty cases, society's most critical legal determination.

It is time to reposit similar responsibility to jurors of civil cases, because we either trust them or we do not. I would not adhere to "the decades of Texas law that holds that Texas juries cannot be directly informed of the legal effect of their answers" as the Court says it does today. 985 S.W.2d 22. To the extent necessary in the present case, I would overrule *Grasso v. Cannon Ball Motor Freight Lines*, 125 Tex. 154, 81 S.W.2d 482, 487 (Tex.Com.App.1935), and call for the amendment of Rule 277. Furthermore, I would not only tell the jury about the fifty-one percent rule and the statutory trebling of damages, but I would also eliminate the collateral source rule. In short, it is time to take the blinders off in order to bring clarity and honesty to our search for the truth.

For these reasons, I concur.

HECHT, Justice, joined by OWEN, Justice, dissenting.

The ordinary jury, instructed not to answer damages questions if it finds that more than fifty percent of the negligence that caused plaintiff's injuries is attributable to the plaintiff himself, will likely and correctly infer that a plaintiff cannot recover any damages at all for his injuries unless they were caused no more than fifty percent by his own negligence. The question in this case is whether such an instruction improperly informs the jury of the effect of its assignment of percentages of responsibility to plaintiff and defendant so that it can adjust that assignment to achieve a desired result. Contrary to the Court's view, the question is not answered by the ten-year old provision of Rule 277 of the Texas Rules of Civil Procedure that permits a trial court to predicate a jury's damage findings on affirmative findings of liability. Nothing in the text or history of that provision suggests whether a determination of comparative responsibility either is or is not an affirmative finding of liability. One can argue whether Rule 277 *should* permit an instruction like the one in this case, but without rewriting the rule, one cannot argue that it *does*.

On the other hand, one *can* argue that the Court should not follow its holding in *Grasso v. Cannon Ball Motor Freight Lines* [1] that a jury may not be advised of the effect of finding a plaintiff contributorily negligent. Under *Grasso*, the predicate instruction to the damages questions in the present case was improper. *Grasso* was based on the general principle that a jury should not be advised of the legal effect of its factual findings, otherwise it could make findings merely to achieve a desired result. That principle is debatable. For centuries English-speaking jurisdictions have struggled over whether the jury's role in civil cases should be strictly limited to resolving factual disputes or whether the jury should have a hand in deciding the actual outcome of a case and hence, matters of law. Today's decision is part of that struggle. The real issue is this: should the decision whether to allow recovery to a plaintiff who is more than fifty percent responsible for his own injuries be made by the Legislature or the jury. I conclude that deciding legal issues is generally not within the jury's province. Thus, I respectfully dissent.

## I

Even though the issue before us is a legal one, it is appropriate to summarize the factual dispute briefly to put the legal issue in context. For nine years Vinnie Bilotto had done some professional wrestling as Flying Vinnie Valentino, but he was relatively small (6', 220 lb.), and the most income he ever made in any year was $16,000. To support himself, he also made and managed real estate investments, and over the years his portfolio amounted to more than $100,000. While shopping in an HEB grocery store very late one Saturday night, Bilotto, then age 33, slipped in some root beer that had spilled on

1. 125 Tex. 154, 81 S.W.2d 482, 487 (Tex.Com.   App.1935).

the floor and fell on his left elbow. He did not think he was hurt at the time (he was, after all, accustomed to falling rather hard in the ring) and reported the incident to the manager only at the urging of another customer who saw him fall. But four hours later he went to the emergency room, where he was treated and released. Although his doctors soon released him to wrestle again, he found that persistent pain in his elbow and back made it impossible.

Bilotto sued H.E. Butt Grocery Co., and after a week-long trial, the jury found Bilotto and HEB equally at fault. The district court instructed the jury, in accordance with the *Texas Pattern Jury Charges*,[2] not to find damages unless it assessed Bilotto's share of responsibility for the accident at fifty percent or less. Following this instruction, the jury found Bilotto's damages to be $17,000 for past medical expenses, $80,000 for future medical expenses, $50,000 for loss of past earning capacity, and $35,000 for loss of future earning capacity. The jury failed to find HEB grossly negligent. The trial court rendered judgment for Bilotto for $91,000—half the damages found by the jury—plus $40,346.73 prejudgment interest.

HEB appealed, arguing that the predicate instruction to the damages question improperly advised the jury that Bilotto would not recover if he was found to be more than fifty percent at fault. The court of appeals, sitting en banc, affirmed the judgment by a 4–3 vote.[3] The majority held that the district court did not abuse its discretion because it followed the *Texas Pattern Jury Charges*.[4] Justice Duncan, joined by Justice Green, dissented, arguing that the predicate instruction was prohibited by the holding of *Grasso*,[5]

which disapproved an instruction to the jury not to find damages if it found the plaintiff contributorily negligent.[6] The dissent further argued that *Grasso* was not altered by later amendments to Rule 277 of the Texas Rules of Civil Procedure.[7] Justice Rickhoff also dissented, arguing that the jury should be told the effect of its answers, but that it was up to this Court, not the court of appeals, to make that decision.[8]

This Court granted HEB's application for writ of error[9] and heard oral argument. Before the case could be decided, however, JUSTICE CORNYN resigned and JUSTICE HANKINSON was appointed in his place. JUSTICE HANKINSON recused herself, and the CHIEF JUSTICE certified that fact to the Governor, who thereupon commissioned Chief Justice Linda Thomas of the Court of Appeals for the Fifth District of Texas at Dallas to hear and decide the case.[10] The Court scheduled a second oral argument at which Chief Justice Thomas participated.

## II

In *McFaddin v. Hebert*,[11] we held that it was reversible error for the trial court or counsel to inform the jury of the legal effect of its answers "when the issues are such that ordinary men are not presumed to know the legal effect of the answers".[12] A few years later we applied that principle in *Grasso v. Cannon Ball Motor Freight Lines* to hold that instructing the jury to find damages only if it did not find contributory negligence informed the jury that contributory negligence was a complete bar to recovery and thus violated the rule of *McFaddin*.[13] The Court wrote:

---

**2.** *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES--MALPRACTICE, PREMISES & PRODUCTS PJC 80.1 (1997).

**3.** 928 S.W.2d 197.

**4.** *Id.* at 200.

**5.** 125 Tex. 154, 81 S.W.2d 482 (Tex.Com.App. 1935).

**6.** 928 S.W.2d at 202.

**7.** *Id.* at 202–203.

**8.** *Id.* at 204.

**9.** 40 TEX. SUP.CT. J. 628 (June 12, 1997).

**10.** TEX. GOV'T CODE § 22.005.

**11.** 118 Tex. 314, 15 S.W.2d 213 (Tex.Com.App. 1929).

**12.** *Id.* at 217; *See* James G. Denton, *Informing a Jury of the Legal Effect of Its Answers*, 2 ST. MARY'S L.J. 1, 6–7 (1970).

**13.** 125 Tex. 154, 81 S.W.2d 482 (Tex.Com.App. 1935).

Counsel for Grasso contend that it is the law of this state that it is not reversible error to instruct a jury to the effect that affirmative or negative answers to certain questions will relieve them of the duty of answering certain other questions. We agree to this contention in some instances. In spite of this, it is certainly not proper for the court to tell the jury the ultimate result of all of their answers in submitting a case on special issues. In our opinion, the instruction preliminary to question No. 15, supra, in effect did exactly that. It will be noted that the instruction directed the jury that if they convicted the defendant of negligence and acquitted the plaintiff of contributory negligence, to find the amount of the plaintiff's damages, otherwise not. Such an instruction clearly told the jury that they must find the defendant guilty of negligence, and the plaintiff not guilty of contributory negligence, in order for the plaintiff to recover. Such a charge is undoubtedly in violation of our special issue statutes. It was a general charge, and informed the jury of the result of all of their answers. On another trial the issue of damages should be submitted without the above-quoted preliminary instruction.[14]

In *Grieger v. Vega*,[15] we explained that a conditioning instruction was not improper when any juror of ordinary intelligence would know the effect of a finding. We upheld an instruction to the jury not to find damages unless they found liability, explaining:

> The rule is well grounded in our practice that it is error to submit a special issue conditionally when the effect of such submission is to inform the jury as to the judgment which will be rendered as a result of the verdict. In order for a conditional submission to be erroneous it must "inform" the jury of that which it would not know but for such conditional submission. The spirit of our practice of submitting cases on special issues would be violated if jurors were informed either by the court or by counsel of the effect of their answers, but where the effect is so obvious

that any juror with ordinary intelligence would know its effect, neither the letter nor the spirit of the rule is violated by a charge which assumes such knowledge. The sole question for decision was whether or not petitioner wrongfully killed respondent's son. No juror would have been of the opinion that petitioner was liable in damages to respondent if his act was not wrongful. Any juror of ordinary intelligence would have known the legal effect of the answer to Special Issue No. 1 [concerning liability]. The conditional submission of Special Issue No. 2 [concerning damages] did not inform the jury of its legal effect, and, therefore, should not cause a reversal of the trial court's judgment.

. . . . [*Grasso*] is distinguishable from the instant [case]. There the charge of the court informed the jury of the effect of all its answers to issues of both primary negligence and contributory negligence. The opinion recognized that it is not always reversible error to instruct a jury to the effect that affirmative or negative answers to certain questions would relieve them of the duty of answering certain other questions, but held that it was reversible error when the jury was informed of the result of all of its answers in a case wherein there were issues of both primary negligence and contributory negligence. . . .

The position of respondent here is: "Thou shalt not submit the damage issue conditionally." We cannot unqualifiedly accept that as a rule of decision. It would be the better practice to submit the damage issue unconditionally, but when, in a case like the instant one, the conditional submission conveys no information to the jury, the case should not be reversed on that account.[16]

Bilotto does not argue, nor could he, that the predicate instruction in the present case did not inform the jury of the effect of a finding that Bilotto was more than fifty percent at fault, nor does anyone argue that a

---

14. *Id.* at 487.

15. 153 Tex. 498, 271 S.W.2d 85 (1954).

16. *Id.* at 87 (citations omitted).

juror of ordinary intelligence would know that a plaintiff who is more than fifty percent at fault cannot recover. An ordinary juror is at least as likely to think that a plaintiff will recover whatever portion of damages was caused by the defendant. Thus, under *Grieger* and *Grasso,* the instruction in the present case was error.

But Bilotto argues that these cases have been overruled by amendments to Rule 277 of the Texas Rules of Civil Procedure. *Grasso* was decided six years before the Texas Rules of Civil Procedure became effective. New Rule 277,[17] like its statutory predecessor,[18] did not expressly prohibit advising the jury of the effect of its answers. Years later, when *Grieger* was decided, there was still no such prohibition in the rules. The prohibition remained entirely a creature of decision.

In 1973, Rule 277 was amended to include the following language for the first time:

> The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers where it is properly a part of an explanatory instruction or definition.[19]

Although the Court states that the predicate instruction in the present case was proper because "it does not directly instruct the jury about the legal effect of its answers" but "merely incidentally informs the jury of the legal effect of its answers",[20] Bilotto does not make this argument, and with good reason. The 1973 amendments also added the following provision:

> In any case in which issues are raised concerning the negligence of more than

one party, the court shall submit an issue inquiring what percentage, if any, of the negligence that caused the occurrence in question is attributable to each of the parties found to have been negligent, and shall instruct the jury to answer the damage issues without any reduction because of negligence, if any, of the person injured.[21]

The rule thus required the trial court to instruct the jury to answer damage issues without regard to comparative responsibility findings. Commenting on the amendments, Justice Jack Pope wrote that "the jurors' concern is not that of achieving a particular result", citing *Grieger.*[22] Several years later we reiterated in *Gulf Coast State Bank v. Emenhiser:* "The jury's concern is to find disputed facts, rather than to achieve a particular result." [23]

But the most compelling evidence that the 1973 amendments did not modify *Grasso* or *Grieger* is that in 1985, a subcommittee of the Supreme Court Advisory Committee recommended that the following sentences be added to Rule 277:

> Upon the request of either party, the court shall instruct the jury as to the effect their answers to interrogatories will have upon the judgment to be entered in the case. The court shall also predicate the damage interrogatories upon affirmative findings of liability.[24]

If the 1973 amendments had permitted a predicate instruction like the one in the present case, the first sentence would have been unnecessary. Transcripts of the Committee debates on this proposal, submitted in the record before us, show that Committee members were all of the view that an instruction that suggested to the jury the effect of its comparative responsibility findings would be improper under the existing rule.

---

17. 4 Tex. Bar J. 529 (Oct.1941); 3 Tex. Bar J. 566–567 (Dec.1940).

18. Act of March 27, 1913, 33rd Leg., R.S., ch. 59, 1913 Tex. Gen. Laws 113.

19. 493–494 S.W.2d (Texas Cases) xxxiii (1973).

20. *Ante* at 24.

21. 493–494 S.W.2d at xxxiii.

22. Jack Pope & William G. Lowerre, *Revised Rule 277—A Better Special Verdict System for Texas,* 27 Sw. L.J. 577, 589 (1973).

23. 562 S.W.2d 449, 453 (Tex.1978).

24. Letter from Franklin Jones to Justice James P. Wallace (Feb. 21, 1986) (on file with the Supreme Court of Texas).

The Committee rejected the proposed language and instead recommended adding only the following sentence: "The court may predicate the damage question upon affirmative findings of liability." [25] The transcript of the meeting at which this proposal was adopted is not available, and thus there is no record of the reasons for the Committee's rejection of the language proposed by the subcommittee and recommendation of the substituted language instead. Minutes of the meeting reflect that Justice Pope opposed the subcommittee's recommendation, and that the Committee unanimously rejected it. While these facts alone cannot establish that the Committee decided against modifying the rule of *Grasso* and *Grieger*, there is nothing at all to suggest that the Committee believed by rejecting the subcommittee proposal and adopting a substitute provision it was recommending that the Court overrule those cases by rule. Moreover, the Committee only makes recommendations to the Court, and no extant record indicates the Court's intention in adopting the Committee's recommended change to Rule 277.

Despite the dearth of evidence of intent to overrule *Grieger* and *Grasso* by the 1985 amendment, the Court attempts to argue that the rule expressly permits answers to damage questions to be predicated on comparative responsibility findings because such findings are "affirmative findings of liability" within the meaning of the rule. But the jury must find a defendant liable *before* it determines comparative responsibility. Rule 277 requires a comparative responsibility finding for "each of the persons found to have been culpable." If a jury finds that defendant was not negligent, it need not determine comparative responsibility at all. Since a comparative responsibility finding presumes a liability finding, the former cannot be said to be a liability finding.

The text and history of Rule 277 simply do not support Bilotto's argument that the Court intended to overrule *Grasso* and *Grieger*.

## III

*Grasso* and *Grieger* have not been, and should not be, overruled. To tell the jury the legal policy determined by the Legislature and allow the jury to make findings to avoid that policy and achieve a desired result gives the jury a role it should not have and usurps the province of the Legislature.

## A

Debate over the role of jurors in determining legal as well as factual issues is centuries old. In England, Lord Coke authored the maxim, "ad questionem facti non respondent judices ... ad questionem juris non respondent juratores".[26] Blackstone explained the rationale for the rule thusly:

> [I]f the power of judicature were placed at random in the hands of the multitude, their decisions would be wild and capricious, and a new rule of action would be every day established in our courts. It is wisely therefore ordered, that the principles and axioms of law, which are general propositions, flowing from abstracted reason, and not accommodated to times or to men, should be deposited in the breasts of the judges, to be occasionally applied to such facts as come properly ascertained before them.[27]

But the dichotomy between fact questions and legal questions cannot be sharply drawn.[28] Moreover, in criminal cases juries have traditionally determined guilt, which is an application of law to the facts. One commentator has stated that "the jury's power to decide issues of law (as well as fact) was a British tradition that ... had historical roots dating back to the Magna Carta." [29]

---

**25.** Minutes of Supreme Court Advisory Comm., at 4–5 (Mar. 7–8, 1986) (on file with the Supreme Court of Texas).

**26.** 1 Edward Coke, The First Part of the Institutes of the Laws of England § 234, at 155(b) (Garland Publishing, Inc.1979) (1832), cited in Douglas G. Smith, *The Historical and Constitutional Contexts of Jury Reform*, 25 Hofstra L.Rev. 377, 415 n. 138 (1996).

**27.** 3 William Blackstone, Commentaries *379–80.

**28.** James B. Thayer, *"Law and Fact" in Jury Trials*, 4 Harv. L.Rev. 147, 148–149 (1890).

**29.** *Developments in the Law—The Civil Jury*, 110 Harv. L.Rev. 1408, 1418 (1997). *See* Smith, *supra* note 26, at 416.

In many early American jurisdictions, no sharp distinction developed between the power of judges to decide legal issues and the power of juries to resolve disputed facts. Early American juries were often authorized to decide both. In one of the few jury trials before the Supreme Court, Chief Justice John Jay charged the jurors

> that on questions of fact, it is the province of the jury, on questions of law, it is the province of the court to decide. But it must be observed that by the same law . . . you [the jury] have nevertheless a right to take upon yourselves to judge of both, and to determine the law as well as the fact in controversy.[30]

Reasons why early American law often allowed jurors broad authority to determine legal as well as factual issues vary. One commentator suggests that the American legal system's willingness to allow jurors to pass on issues of law resulted from the perceived parity in legal knowledge between ordinary citizens and professional lawyers and judges. As the legal knowledge possessed by legal professionals increased over time, the jury's role respecting legal matters decreased.[31] Another commentator ascribes different reasons for allowing juries to decide legal issues:

> Post–Revolutionary Americans accepted the British deference to juries on issues of law because of the belief that this deference served to protect citizens from tyrannical government. In addition to this general custom, the constitutions of several states expressly provided that juries were arbiters of both law and fact, and well into the nineteenth century judges issued instructions acknowledging the jury's right to determine the law.

> Ultimately, however, the American jury lost most of its power to decide questions of law, an understandable development given the changes in government that the Revolution had produced. When a foreign power ruled the colonies, it was indeed democratic to tell juries that they could ignore judicial instructions on the law if they so chose. However, after independence, statutes were the product of democratically elected legislatures, and the common law was the creation of American, not British, judges. Thus, jury control over issues of law was in a sense antidemocratic.[32]

Whatever the reasons for the jury's authority under early American law, that authority steadily and uniformly diminished in the nineteenth century. The jury, which was initially viewed as "a protective barrier between the citizen and a potentially tyrannous, corrupt state", came to be viewed as "an instrument for the fair and efficient administration of justice."[33] At the close of the nineteenth century, the United States Supreme Court observed that "it is the duty of juries . . . to take the law from the court and apply that law to the facts as they find them to be from the evidence."[34] The Court reasoned that "the functions of court and jury . . . cannot be confounded or disregarded without endangering the stability of public justice, as well as the security of private and personal rights."[35] Only in criminal cases has the jury retained the authority to decide the ultimate outcome, but even then its authority is often limited—in jurisdictions other than Texas—to determining guilt, not punishment.

## B

Historically in Texas, in civil cases jurors' role in resolving factual disputes has been paramount,[36] and jurors have been precluded from achieving a particular result based on

**30.** *Georgia v. Brailsford,* 3 U.S. (1 Dall.) 1, 4, 1 L.Ed. 483 (1794).

**31.** Smith, *supra* note 26, at 449–450.

**32.** *Developments, supra* note 29, at 1418–1419 (footnotes omitted).

**33.** Martin A. Kolter, *Reappraising the Jury's Role as Finder of Fact,* 20 Ga. L.Rev. 123, 128 (1985).

**34.** *Sparf v. United States,* 156 U.S. 51, 102, 15 S.Ct. 273, 39 L.Ed. 343 (1895).

**35.** *Id.* at 106, 15 S.Ct. 273.

**36.** *Coles' v. Perry,* 7 Tex. 109, 140 (1851).

their individual perceptions of the law.[37] Consistent with this view, the Court in *McFaddin v. Hebert* [38] held that it was reversible error for counsel or the court to inform jurors of the legal effect of their answers "when the issues are such that ordinary men are not presumed to know the legal effect of the answers".[39] The Court has consistently held to the view that a trial court commits error if its conditional submission informs the jury of some legal consequence that it would not know but for the conditional submission.[40] Where the effect of an answer is so obvious as to fall within any juror's ordinary knowledge, no reversible error exists.

The rule established by these cases prevents jurors from engaging in outcome-oriented decisionmaking. Conveying information to the jury concerning the legal effect of comparative fault findings adversely affects the jury's fact-finding role. Such information allows a jury to manipulate its answers to reach a result it deems appropriate. In the process, jurors stray from their role as objective triers of fact and become lawmakers. Decisions are rendered not based on a judge's application of our comparative negligence statute, but " 'according to what the jury in their own opinion suppose the law is or ought to be' " in a particular case.[41] For example, the jury in the present case may have believed that Bilotto's proportionate fault exceeded 50%, but nevertheless opted to adjust their fault findings to allow Bilotto to recover based on their conclusion that our comparative negligence statute is unjust. The possibility of this outcome oriented decision-making is inconsistent with Rule 277's mandate that juries act only as triers of fact.

Were it otherwise, jurors would usurp not only the judiciary's power to apply the law but the Legislature's power to legislate as well.[42] The predicate instruction provided the jury with information it could use to thwart legislative policy. Having been advised that the policy of Texas is to deny a plaintiff who is more than fifty percent responsible for his own injury recovery from a defendant tortfeasor, the jury was permitted to reject this legislative policy.

Other jurisdictions vary over whether jurors should be told, either directly or indirectly, that a plaintiff found to be more than a certain percentage at fault will be barred from all recovery.[43] The better rule, in my view, is the one to which Texas has adhered until today.

### C

Whether jurors should be told the legal effect of their comparative responsibility finding should not be merely an ad hoc decision; rather, it should be based on a principled determination of the proper role of the jury in civil cases. If jurors should be told the effect of their findings, so that they can decide not only the factual disputes but the ultimate outcome of the case, then jurors should know not only the effect of their comparative responsibility finding but of other findings as well. They should be told, for example, that a finding that plaintiff knew or should have known of injury before a certain date will bar recovery. They should be told whether plaintiff is recovering compensation for his injuries from collateral sources so that he will receive not only the amounts awarded by the jury but other benefits as well. They

---

**37.** *Gulf Coast State Bank v. Emenhiser,* 562 S.W.2d 449, 453 (Tex.1978) ("The jury's concern is to find disputed facts, rather than to achieve a particular result."); *see* Pope and Lowerre, *supra* note 22, at 589.

**38.** 118 Tex. 314, 15 S.W.2d 213 (Tex.Com.App. 1929).

**39.** *Id.* at 217.

**40.** *Emenhiser,* 562 S.W.2d at 453; *Grieger v. Vega,* 153 Tex. 498, 271 S.W.2d 85, 86 (1954); *Schroeder v. Rainboldt,* 128 Tex. 269, 97 S.W.2d 679, 684 (1936); *Grasso v. Cannon Ball Motor*

*Freight Lines,* 125 Tex. 154, 81 S.W.2d 482, 487 (1935).

**41.** *Skidmore v. Baltimore & O.R. Co.,* 167 F.2d 54, 57 ( 2d Cir.1948) (citation omitted).

**42.** *Id.*

**43.** *See* Stuart F. Schaffer, Comment, *Informing the Jury of the Legal Effect of Special Verdict Answers in Comparative Negligence Actions,* 1981 Duke L.J. 824 (1981). *See also Developments, supra* note 29 at 1432 ("The law of contributory negligence is one area in which civil jury nullification has a historic and continuing relevance.").

should be told that certain findings will result in joint and several liability among defendants. They should be told that some damages will be multiplied by statute. If the judgment is to be placed in the jury's hands, then they should be told the entire truth, not just part of it.

I doubt that the Court will follow today's decision this far, but I see no principled reason for holding back. In all the examples I have mentioned, policy determined by the Legislature or the courts could be ignored as unfair by a jury in making its findings. A jury might believe that the applicable limitations period is too long or too short, that a plaintiff should not be awarded damages that overlap benefits from collateral sources, that each defendant should be liable only for its role in causing injury, that a defendant should be jointly liable for all damages despite its minor role, or that the total recovery should be limited to a certain amount after any statutory multipliers. In my view, these are policies for the Legislature and the courts to determine as a matter of law. A jury should not be permitted to ignore such policies any more than it can ignore the definition of negligence or any other instruction in the charge.

Today's holding permits a jury to do just that. A jury that believes the State's comparative responsibility policy to be unfair can simply adjust its comparative responsibility and damages findings to ensure a particular result. Neither this issue, nor other policy issues, should be subject to jury nullification in civil cases.

## IV

At least two practical problems also inhere in the Court's decision. One is that by allowing the jury to omit damage findings without a comparative responsibility finding favorable to plaintiff, the trial court risks the necessity of a complete new trial if liability findings adverse to the plaintiff are reversed on appeal. One senior member of the Supreme Court Advisory Committee observed during the 1985 discussions, "from the viewpoint of

the administration of justice, it seems like to me you're going to require unnecessary retrial. Why not let the jury find damages and if the judge is wrong on liability, doesn't award damages, then you can render rather than remand." [44] A number of trial judges have filed an amicus curiae brief in this case, arguing that predicating damage findings on a comparative responsibility finding favorable to plaintiff may shorten the jury's deliberations. That is, of course, true, but whether it works any real efficiency is more difficult. A case which must be retried because the jury made no damage findings is an immense inefficiency.

Moreover, the Court holds that a trial court has the discretion whether to predicate damages findings on a comparative responsibility finding favorable to the plaintiff, but the Court does not describe the factors that weigh in that exercise of discretion. I can discern only two. The trial court's decision whether to predicate damages findings on a comparative responsibility finding favorable to plaintiff may turn on how uncertain the court believes the comparative responsibility finding to be. If the court believes that the jury is almost certainly to find comparative responsibility unfavorably to the plaintiff, then the trial court may wish to condition damage findings on a comparative responsibility finding favorable to the plaintiff in order to spare the jury the necessity of deliberating on damages. If, on the other hand, the court believes that the jury will find comparative responsibility favorably to the plaintiff, the court may omit the instruction as unnecessary. In a close case, when the comparative responsibility finding is in doubt, the only factor weighing on the court's exercise of discretion in deciding to make damage findings conditional is whether the court wishes to assist the plaintiff by giving an instruction that warns the jury about the effect of its findings, or to assist the defendant by refusing to give the jury such an instruction. This is the first occasion, to my knowledge, in which the Court allows trial courts to decide how to charge the jury

---

**44.** Transcript of Supreme Court Advisory Comm. Mtg., Vol. 1, p. 250 (Nov. 1, 1985) (on file with the Supreme Court of Texas).

based on which side of the case the court wants to help. The Court would be on much firmer ground either to require or prohibit a predicate instruction like the one in this case. Allowing the trial courts discretion politicizes the jury charge to an unprecedented degree.

\* \* \* \* \*

For these reasons, I would hold that the predicate instruction in this case was reversible error. Accordingly, I respectfully dissent.

BAKER, Justice, joined by ENOCH and OWEN, Justices, dissenting.

A trial court must submit charge instructions in compliance with Rule 277. *See* TEX.R. CIV. P. 278; *see also Gulf Coast State Bank v. Emenhiser,* 562 S.W.2d 449, 452–53 (Tex.1978). "The trial court may predicate the damage question or questions upon affirmative findings of liability." TEX. R. CIV. P. 277. Today the Court asserts that this language from Rule 277 determines the outcome of this case. Having said that, the Court rushes headlong to its preordained conclusion that Rule 277 expressly authorizes the instruction the trial court gave in this case. Accordingly, the Court holds the trial court did not err in giving the instruction. 985 S.W.2d 22.

I believe the Court focuses on the wrong part of Rule 277. The rule also states:

> The Court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the Court's charge shall not be objectionable on the ground that it incidently constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition.

TEX.R. CIV. P. 277. By ignoring the prohibition against advising the jury of the effect of its answers, the Court erroneously concludes that the charge in this case does not violate Rule 277. Accordingly, I dissent.

## I. JURY INSTRUCTIONS

The jury's concern is to find disputed facts, rather than to achieve a particular result.

*See Emenhiser,* 562 S.W.2d at 453. The trial court's charge need not and should not burden the jury with surplus instructions. *See Acord v. General Motors Corp.,* 669 S.W.2d 111, 116 (Tex.1984). This is so even though an instruction may be a correct statement of law. *See Acord,* 669 S.W.2d at 116. This Court has treated surplus instructions to the charge as impermissible comments that tilt or nudge the jury one way or the other. *See Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex. 1984); *Acord,* 669 S.W.2d at 116; *Emenhiser,* 562 S.W.2d at 453.

We first approved instructions conditioning damages findings on an affirmative liability finding in *Grieger v. Vega,* 153 Tex. 498, 271 S.W.2d 85 (1954). In *Grieger,* the charge instructed the jury to answer the damages question only if it found the defendant's conduct wrongful. *See Grieger,* 271 S.W.2d at 86. The Court held that this instruction did not violate the longstanding rule against informing the jury of the legal effect of their answers. The Court observed that any juror of ordinary intelligence would know that a defendant does not owe a plaintiff damages unless the defendant is liable for the plaintiff's injuries. *See Grieger,* 271 S.W.2d at 87. In 1988 the Court amended Rule 277 to expressly permit instructions conditioning damages on a liability finding. *See* TEX.R. CIV. P. 277.

However, Rule 277 does *not* permit conditioning damages on a finding of a certain percentage of comparative negligence. A jury's answer to the comparative negligence question is not a "finding of liability" under Rule 277. Instead, a finding of comparative negligence greater than 50% is a finding of an affirmative defense to liability. *See* TEX. R. CIV. P. 94; *Lawson v. Estate of McDonald,* 524 S.W.2d 351, 355 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.). We held in *Grasso* that conditioning damages on a negative finding of contributory negligence impermissibly tells the jury the legal effect of their answers. *See Grasso v. Cannon Ball Motor Freight Lines,* 125 Tex. 154, 81 S.W.2d 482, 487 (Tex.Com.App.1935). Although *Grasso* involved contributory negligence as an absolute bar to a plaintiff's recovery instead of the current 51% bar, *Grasso's* reasoning ap-

plies here. The law of contributory negligence is not within the realm of an ordinary juror's knowledge. *See Grieger,* 271 S.W.2d at 87 (approving conditioning damages on a finding of liability and distinguishing *Grasso); Finck Cigar Co. v. Campbell,* 134 Tex. 250, 133 S.W.2d 759, 760 (Tex.Com.App.1939)(approving conditioning damages on a finding of liability and distinguishing *Grasso).* This is true whether the bar to recovery is at 1% or 51% and whether it is called "contributory negligence," "comparative negligence," "comparative responsibility," or "proportionate responsibility." Instructing the jury on the legal effect of a plaintiff's percentage of responsibility is more than "incidental"—it impermissibly allows the jury to determine the plaintiff's ultimate recovery in the trial court's judgment.

## II. ANALYSIS

Here, the instruction informed the jury that for Bilotto to recover damages, they had to find him 50% or less responsible for his injuries. This instruction essentially told the jury what it needed to do to ensure Bilotto's recovery.

The Court concedes that PJC 80.1 is logically indistinguishable from the instruction the Court found impermissible in *Grasso.* However, the Court asserts the instruction does not violate Rule 277. The Court attempts to discount *Grasso* because it was decided before the 1988 amendments. However, the additions to Rule 277 do not affect *Grasso's* primary reasoning. The 1988 amendments did not remove the language prohibiting jury instructions from informing jurors about the legal effect of their answers. The Court does not argue that the average juror knows the 50% rule, and rightfully so because that argument cannot seriously be made. In my view, it is clear that the instruction in this case told the jury something they did not know about the findings they were making. *Grasso* clearly prohibits such an instruction. Therefore, *Grasso* is still good law and supports the proposition that the jury instruction in this case did more than incidentally inform the jury about the legal effect of their answers.

There are also policy reasons why the trial court should not condition damage findings on a finding that a plaintiff is no more than 50% negligent. That bar to recovery is only one part of a comprehensive legislative comparative negligence scheme. Without question, such an instruction provides the jury with information they can use to thwart legislative policy. Clearly, if the trial court instructs the jury on how the comparative fault system operates, then the jury can adjust its answers accordingly. This instruction to the jury is a surplus instruction that is an impermissible comment that tilts or nudges the jury one way. *See Lemos,* 680 S.W.2d at 801; *Acord,* 669 S.W.2d at 116.

For these reasons, I would hold that the trial court abused its discretion by overruling H.E.B.'s objection to the 51% bar instruction. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992)(stating that the trial court's clear failure to analyze or apply the law correctly is an abuse of discretion). The trial court's reliance on PJC 80.01 in submitting the 51% bar instruction does not make the instruction proper. Texas Pattern Jury Charges are not law. *See Keetch v. Kroger Co.,* 845 S.W.2d 276, 281 (Tex.App.—Dallas 1990), *aff'd,* 845 S.W.2d 262 (Tex.1992).

I would also hold that the trial court's abuse of discretion was harmful, and therefore, reversible. *See* Tex.R.App. P. 61.1(a). The record shows that the parties hotly contested their comparative responsibility. During deliberations, the jury asked the trial court to "please clarify the if/or situation at the end of Question 2." The trial court then asked the jury to be more specific in its inquiry. The jury did not reply to the trial court's response. The jury's request for an explanation of the 51% bar instruction and their subsequent 10–2 verdict finding Bilotto and H.E.B. each 50% negligent suggest that the instruction heavily influenced the jury's deliberations. *See Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995)(recognizing that a superfluous instruction would be more likely to influence the jury improperly in a close case).

## III. CONCLUSION

The 51% bar instruction allowed the jury to decide whether Bilotto or H.E.B. should

"win" the case and by how much. The instruction was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex.R.App. P. 61.1(a); *Reinhart*, 906 S.W.2d at 473.

I respectfully dissent.