In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00433-CV

_____

RICHARD VAUGHN SEEGER AND BEVERLY SEEGER, Appellants

V.

DEL LAGO OWNERS ASSOCIATION, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 15-03-03034-CV

**MEMORANDUM OPINION**

At issue in this appeal is whether attorney's fees awarded in a judgment are reasonable and necessary under the standards in *Rohrmoos Venture v. UTSW DFVA Healthcare LLP*, 578 S.W.3d 469, 486-502 (Tex. 2019). Because we conclude the appellants' arguments that the evidence is insufficient to support the award lack merit, we will affirm.

1

Background

*The Trial in 2016*

For a second time, Richard Vaughn Seeger and Beverly Seeger have appealed judgments awarding attorney's fees and claimed the evidence is insufficient to support the awards.[1] We will discuss the background that led to the Seegers' appeal from the first judgment awarding attorney's fees, which this Court reversed, an appeal we will refer to here as *Seeger* I.

In 2015, the Del Lago Homeowners Association (the Association) sued the Seegers to collect maintenance assessments on three lots, lots the Seegers own in the Del Lago subdivision. In the original suit, the Association alleged the Seegers breached the obligations they owed the Association to pay maintenance assessments burdening their lots. The assessments on the lots are created in declarations filed in the real property records in Montgomery County, and they govern the residential lots in the Del Lago subdivision.[2] Before the trial that led to the first of the Seegers' appeals, several issues were resolved before the trial began through motions for

---

[1]*See Seeger v. Del Lago Owners Ass'n,* No. 09-16-00450-CV, 2018 Tex. App. LEXIS 3129 (Tex. App.—Beaumont May 3, 2018, pet. denied).

[2]The maintenance assessments at issue in *Seeger* I stem from restrictive covenants found in the chains of title to the Seegers' lots. The maintenance assessments are filed as declarations in the property records of Montgomery County in an instrument titled: "Amended and Restated Declaration of Covenants, Conditions, Assessments, Charges, Servitudes, Liens, Reservations and Easements." *Id*. at *2 n.2.

2

summary judgment. When granting one of these motions, the trial court found that as a matter of law, the Seegers owed the Association $12,999 in assessments, which were past due and unpaid. Even so, the various summary-judgment rulings in the proceedings to the first appeal were interlocutory, as the trial court left several issues unresolved for the trial. The issues the trial court left for the jury were:

- what amount to award as reasonable and necessary attorney's fees for the services performed by the Association's attorneys to recover the assessments of $12,999;
- did the Association breach its contract with the Seegers by failing to service the Seegers' lots; and
- were the Seegers excused from paying the assessments based on the conduct they claimed justified their refusal to pay the assessments that were due and unpaid?[3]

When the 2016 trial concluded, the jury rejected the Seegers' defenses to the Association's collection action and found $51,497 is a reasonable fee for the services the Association's attorneys performed for "preparation and trial."[4][5] The trial court rendered judgment on the jury's verdict, and then the Seegers appealed.

On appeal, the Seegers raised six appellate issues and asked the Ninth Court of Appeals to overturn the judgment, which allowed the Association to collect the past-due assessments and to shift the attorney's fees it incurred in prosecuting the

---

[3]*Id*. at *7-*8.
[4]*Id*. at *11-*12 (as to the defenses, the jury found the Association did not breach its contract with the Seegers and found the Seegers' failure to pay the assessments was not excused).
[5]*Id*. at *1-*2, *11, *24.

3

case and defeating the Seegers' counterclaims and defenses to the Seegers.[6] In resolving the appeal, we rejected the Seegers' arguments supporting their issues that they did not owe the Association $12,999 in unpaid assessments.[7] Even so, we agreed with the Seegers that the attorney's fees the jury awarded should be reversed because the Association had not segregated the time its attorneys spent in performing their services between the claims on which the Association had a legally recognized right to recover attorney's fees and the claims on which the Association had no legally recognized right to recover an award for attorney's fees.[8] Since the Association failed to adequately segregate the evidence it presented to the jury on attorney's fees between the claims on which it was legally authorized to seek a recovery and those on which it was not, we agreed with the Seegers that the evidence reviewed from the trial in 2016 did not support the full amount the jury awarded in attorney's fees.[9] As to those fees on which the Association established it had a legally authorized basis to justify its recovery, we observed that section 5.006 of the Texas Property Code "permits the prevailing party who filed an action based on a breach of restrictive covenant pertaining to real property to collect reasonable attorney's

---

[6]*Id.* at *1-*2.
[7]*Id.* at *21, *24, *28.
[8]*Id.* at *29-*31.
[9]*Id.* at *31.

4

fees and costs" while noting that parties are not generally legally authorized to recover attorney's fees for successfully defeating claims that sound in tort.[10]

*The Trial on Remand*

In the trial on remand, the Association asked the trial court to preadmit the exhibits it was planning to offer in the trial regarding the Association's claim for attorney's fees. One of the exhibits discussed in that hearing was marked as Exhibit 1. Exhibit I contains a detailed list describing the work done by the firm the Association retained to represent it in the case between October 2015 and November 2016. That said, Exhibit 1 does not include all the attorney's fees the Association incurred in the case. For instance, before October 2015, the Association was represented by another law firm and lawyer who filed the case against the Seegers and the time entries from that firm and that attorney are not included in Exhibit 1. Exhibit 1 also includes no time entries for the work performed by the firm that represented the Association in the appeal of *Seeger* I between January 2019 to May 2019 (the date the appeal was perfected until the date the Ninth Court of Appeals remanded the case to the trial court.) And Exhibit 1 contains no time entries by the law firm responsible for preparing the motions for summary judgment on the Seegers' tort claims, the claims on which the trial court granted the summary judgment before the case went to trial in 2016. When the trial court asked the

---

[10]*Id*. at *29; Tex. Prop. Code Ann. § 5.006.

5

Seegers' attorney in the pretrial hearing whether he objected to admitting Exhibit 1 in the trial on remand, the attorney responded: "Yes, we don't have objections to that exhibit."

Following the hearing, the Association called just one witness, Chris Archambault, in the trial, Archambault testified about the Association's claim for attorney's fees. Archambault explained that he is the attorney who represented the Association in the trial in 2016 (which involved the Seegers' breach of contract counterclaims and contract defenses) and in the trial on remand. In the trial on remand, the only issue before the jury was what amount represented a reasonable award for the attorney's fees that were necessary to collect the assessments, to defeat the Seegers' contract defenses, and to defeat the Seegers' breach of contract counterclaims. The parties, their attorneys, and the trial court were aware that the Ninth Court of Appeals reversed the attorney's fee award from the 2016 trial because the Association had not presented evidence segregating between the claims on which it had a legal right to shift the fees it incurred in the case to the Seegers and the claims on which the Association, under the guidance provided by this Court in *Seeger* I, had explained the Association did not have a legal basis on which to shift the attorney's fees to the Seegers.

Archambault testified in a narrative fashion in the trial on remand, discussing his qualifications, experience, expertise, and background as an attorney. He

6

explained that his practice involves representing subdivisions governed by homeowners' associations, associations like Del Lago. Archambault described the long history of the litigation between the Association and the Seegers, stating the suit began as a straightforward collections case over past-due maintenance fees that were owed. According to Archambault, the litigation became unusually complex when the Seegers raised numerous counterclaims, counterclaims requiring the Association to expend more in fees than is normally required in collection cases like the one he filed against the Seegers based on his experience representing associations in lawsuits to collect unpaid fees. Archambault explained a large part of the expenses the Association incurred in the case were for work performed by another law firm, the firm that obtained several summary judgments on the Seegers' counterclaims alleging the Association committed various torts. But because the Association did not obtain a summary judgment on the Seegers' breach of contract counterclaims, those claims were tried to a jury in 2016.

Archambault is the attorney who represented the Association in the 2016 trial. Archambault testified the time the Association was seeking to recover as attorney's fees in the trial on remand did not include everything the Association was billed by attorneys who performed work over the life of the case. For example, the work the

7

firm that obtained the summary judgments is not included in Exhibit 1.[11] According to Archambault, Exhibit 1 summarizes the fees Archambault's firm allocated for the work Archambault's firm performed to enforce the Seegers' obligation to pay their past due assessments and to overcome the Seegers' breach of contract counterclaims for the trial in 2016.

The exhibit describes the services Archambault's firm performed. It lists in detail the times, dates, and tasks the attorneys in Archambault's firm who worked on the file. Archambault testified that $240 per hour is the rate his firm charges for the work its attorneys performed for the Association for the entire time the firm represented the Association in the case. According to Archambault, $240 is a reasonable hourly rate for the services the attorneys in the firm charge for working on cases filed in Montgomery County.[12]

Archambault also discussed the entries in Exhibit 1 for the services that he redlined in the exhibit. He identified the redlined items as work he decided should

---

[11]To be sure, Archambault's explanation about the history of the litigation and Exhibit 1 is not a model of clarity. Even so, the summary we have provided for his testimony is a fair representation of what his testimony when considered with Exhibit 1 allowed the jury to reasonably infer the evidence on attorney's fees supports.

[12]*See Rohrmoos Venture v. UTSW DFVA Healthcare LLP*, 578 S.W.3d 469, 498 (Tex. 2019) (describing the minimum itemization required to support a verdict shifting the fees of the prevailing party in the suit to the non-prevailing party when fee-shifting statutes allow the prevailing party a right to receive an award of reasonable and necessary attorney's fees).

be excluded from the work his firm did on the claims on which the Association had no legally authorized basis to recover attorney's fees. Archambault explained that from the opinion in *Seeger* I, he understood the Association did not have a right to recover attorney's fees for the work his firm performed on Seegers' counterclaims for negligence, intentional infliction of emotional distress, or civil conspiracy. According to Archambault, he went through Exhibit 1 identifying those entries he thought should be excluded from the exhibit based on his understanding of what this Court said in *Seeger* I. Archambault then signified what the time entries he thought the jury should exclude from its award in considering the entries in Exhibit 1 by marking through the items they should exclude in red. According to Archambault, the items he redlined in Exhibit 1 were for the work his firm performed on the Seegers' counterclaims for negligence, intentional infliction of emotional distress, and civil conspiracy. But of these, Archambault estimated his firm spent only about $8,000 of the total charges in Exhibit 1 on those claims. Archambault explained why the time entries on the tort counterclaims by his firm was small compared to the total remaining time in the exhibit by stating his "office was not hired to represent and defend [the Association] against those claims[,] so I don't want you to think that that 8,000 is the end-all be-all for the attorney[']s fees related to those claims."[13]

---

[13]The Clerk's Record and the one before us in *Seeger* I reflect that another law firm, Chamberlain, Hrdlicka, White, Williams, and Aughtry, played the central role in obtaining interlocutory-summary-judgment rulings on the Seegers' tort

For all but the last page of Exhibit 1, Archambault tied the services in Exhibit 1 that are not redlined to the work his firm performed to collect the assessments, to defeat the Seegers' contract defenses, and to defeat their breach of contract counterclaims. Turning to the last page of Exhibit 1, Archambault testified that page shows the work Archambault's firm performed after the Ninth Court of Appeals remanded *Seeger* I to the trial court for a new trial on the issue of attorney's fees. In the trial on remand, Archambault asked the jury to add the time required to prepare the case in the trial on remand, $4,914, to the $50,370, which is the amount he attributed for the work his firm performed to collect the past due assessments and to successfully defend the Association against the Seegers' breach of contract counterclaims. Archambault also asked the jury to award the Association nine additional hours to account for the time he did not include in Exhibit 1 for the trial of the case on remand. Finally, he asked the jury to award the Association an additional $10,000 in appellate fees should the Seegers challenge the jury's verdict on appeal.

counterclaims in the trial proceedings that ended with the 2016 trial. Except for the breach of contract counterclaims, which were not resolved by summary judgment, the trial court granted the motions for summary judgment on all the other counterclaims the Seegers filed against the Association, specifically the counterclaims alleging fraud, negligence, intentional infliction of emotional distress, and civil conspiracy.

10

After the Association rested, the Seegers called Richard Rutledge, their attorney, to the stand. Rutledge represented the Seegers in the trial in 2016 and in the trial on remand. In the trial on remand, Rutledge testified he had no quarrel that $240 represented a reasonable hourly rate for the attorneys who worked on the file. Even so, Rutledge testified that since only about $13,000 was in controversy, a reasonable attorney's fee would be "$7,000, give or take . . . for recovering the assessments here." Then Rutledge testified the Association was "not entitled to recover [for defending against the Seegers' counterclaims], in my opinion, and under the law[.]" During his testimony, Rutledge never distinguished between the Seegers' tort and breach of contract counterclaims even though in *Seeger* I the Ninth Court of Appeals never said the Association had no right to recover attorney's fees for the reasonable and necessary fees the Association incurred in defeating the Seegers' breach of contract counterclaims or the fees it incurred to defeat the defenses the Seegers raised to the Association's action to collect the assessments.

Outside the presence of the jury and while in a recess, the trial court allowed the parties to object to the proposed charge. Rutledge objected to submitting any issues awarding attorney's fees, arguing the evidence before the jury was insufficient to support an award. Rutledge's only other objection addressed an instruction in the question the trial court ultimately submitted to the jury on attorney's fees. In the question on fees, the trial court instructed the jury not to "include fees Del Lago

11

Owners Association incurred in successfully defending Del Lago Owners Association against Richard Vaughn Seeger's and Beverly Seeger's tort claims." Rutledge complained the instruction amounted to "a comment on the weight of the evidence" admitted in the trial. The trial court overruled both objections.

After deliberating on its verdict, the jury found the Association should recover attorney's fees of $58,218 for the services the Association's attorneys performed to recover the unpaid assessments. The jury also found the Association should recover another $4,818 in attorney's fees should the Seegers appeal the case to the Court of Appeals.

Following the trial, the Seegers filed a Motion for JNOV. When hearing that motion, the trial court suggested that the Association agree to reduce the jury's award from $58,218 to $51,239 because some of the time entries in Exhibit 1 represented time billed by a paralegal. The trial court suggested a reduction based on the paralegal's time included in Exhibit 1 because Archambault, when he testified, never addressed whether the paralegal's hourly rate was necessary or if it was reasonable. Archambault agreed. Then, the trial court suggested the jury's award should also be reduced to remove several expenses included in Exhibit 1 that the trial court would award as taxable costs, such as expenses Archambault's firm paid for depositions and filing fees. Again, Archambault agreed. Following the hearing, the trial court signed a final judgment and awarded the Association $51,239 in attorney's fees for

"preparation and trial" and $4,818 in attorney's fees contingent on the outcome of the Seegers' appeal.

The Seegers appealed and have raised three issues for our review. In issue one, they argue the evidence is legally and factually insufficient to support the award of attorney's fees. In issue two, the Seegers argue the trial court erred in failing to instruct the jury not to include any amount for the work the Association's attorney performed in defending the Association against the Seegers' tort claims. Last, the Seegers argue the trial court erred in failing to grant their motion for new trial.

Analysis

*Is the evidence legally and factually sufficient to support the judgment's award in attorney's fees?*

In issue one, the Seegers suggest the evidence is legally and factually insufficient to support awarding $51,239 in attorney's fees when considering the amount in controversy was just under $13,000.[14]

---

[14]Even though the Seegers direct their arguments at the jury's award of $58,218 in fees, the judgment does not order them to pay that amount and awards only $51,239 on the Association's claim for attorney's fees. Yet the Seegers' argument focuses on the size of the award compared to the amount in controversy, a nearly 4 to 1 ratio on the record before us here. To prevent the Seegers losing their issue by waiver, we liberally construe their brief even though they have not directed their appellate argument at the amount awarded in the judgment, as we understand their argument to be that an award greater than the amount in controversy is excessive. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008).

We begin by mentioning the counterclaims the Seegers filed against the Association included breach of contract claims and a breach of fiduciary duty claims, as well as tort counterclaims that alleged fraud, negligence, intentional interference with contract, and civil conspiracy.[15] Even though the Seegers argue that we said in *Seeger* I the Association was not entitled to recover attorney's fees for the work its attorneys performed to defeat the Seegers' counterclaims, they read far more into the opinion than what the opinion says. As to the Seegers' counterclaims, all we said in *Seeger* I is that we found nothing in the Property Code or the covenants and declarations "that allowed the Association to recover the attorney's fees it incurred in defending the Association against the Seegers' claims for negligence, intentional infliction of emotional distress, and civil conspiracy."[16] In *Seeger* I, we even noted the Association had a legally recognized basis for recovering attorney's fees on some of its claims, referring the parties to the Property Code and under the declarations relevant to the deeds to the residential lots in the Del Lago subdivision.[17]

In the Seegers' view, the Association had no right to recover attorney's fees for any work the Association's attorneys performed in defeating *any* of their

---

[15]*See Seeger* I, 2018 Tex. App. LEXIS 3129, at *3 ("In their counterclaim, the Seegers alleged the Association breached the obligations it owed them under its contract with the Seegers by failing to provide the services owed to the Seegers as stated in the [Covenants].").
[16]*Id*. at *30-*31.
[17]*Id*. at *29 (citing section 5.006 of the Texas Property Code).

14

counterclaims. *Rohrmoos* contradicts that mistaken view of Texas law; instead, it recognizes that a party to a contract has a legally authorized right to recover attorney's fees for successfully defending against a counter-defendant's breach of contract counterclaims.[18] Since the Seegers filed breach of contract counterclaims and the Association incurred attorney's fees in defeating them, section 5.006 of the Property Code allowed the Association a legal basis on which it could seek to recover reasonable and necessary attorney's fees for both collecting the assessments and to defeat the Seegers' breach of contract defenses as well as their breach of contract counterclaims.[19] According to Archambault, all but $8,000 of the time entries listed in in Exhibit 1 were for time his firm spent to collect the assessments and to defeat the Seegers' breach of contract counterclaims.

Next, the Seegers argue that the Association's evidence in the trial on remand is still not sufficiently segregated because it remains infected with time Archambault's firm spent in defending the Association against tort claims. They also argue the award is too much when compared to the $12,999 that they were found to owe. In the trial on remand, Archambault sought to segregate the fees the

---

[18]*See Rohrmoos Venture,* 578 S.W.3d at 486 (noting that statutes authorizing the recovery of attorney's fees for the services of the prevailing party on a claim to enforce a contract that includes legal services required to successfully defeat a breach of contract counterclaim authorize the prevailing party to recover "reasonable and necessary attorney's fees" for the work defeating the counterclaim for breach of contract).

[19]*Id.*; Tex. Prop. Code Ann. § 5.006.

Association was seeking to recover based on the guidance this Court provided to the parties in *Seeger* 1.[20] For example, Archambault explained he redlined the entries in Exhibit 1 after determining which items were tied to the work his firm spent in defending the Association against the Seegers' counterclaims for negligence, intentional infliction of emotional distress, and civil conspiracy.[21] According to Archambault, after removing the items he redlined in Exhibit 1, the time entries that remain represent the time reasonably and necessarily required to enforce the Seegers' obligation to pay their assessments, to defeat the Seegers defenses alleging the Association breached its obligations to service the Seegers' lots, and to defeat the Seegers' breach of contract counterclaims. Archambault explained that he reduced the time entries in Exhibit 1 to account for the items he redlined, the remaining time entries total 247.7 hours. Archambault asked the jury to add nine more hours to that total to account for the days he spent in the trial on remand to resolve the question of how much the Association was entitled to recover as a reasonable and necessary award of attorney's fees.

---

[20]*See Seeger* I*, 2018 Tex. App. LEXIS 3129, at *29, *31.

[21]Archambault did not discuss the fraud counterclaim when he testified. Even so, we note Exhibit 1 contains no time entries mentioning that Archambault's firm worked on the Seegers' counterclaim for fraud. Since another law firm prepared the summary-judgment motions on the tort counterclaims, it is plausible that Archambault's firm did not work on the fraud counterclaim. Finally, we note the Seegers did not question Archambault about the fraud counterclaim in the trial and have not specifically addressed the fraud counterclaim in arguing the issues they raise in their appeal.

Generally, a party seeking to recover attorney's fees must introduce evidence sufficient to prove the award being sought is reasonable in amount and necessary for the work performed on the claims on which the Legislature or a contract creates a right to recover an award of reasonable and necessary attorney's fees.[22] On claims on which recovering attorney's fees is legally authorized, whether an award is reasonable and whether the work was necessary are issues that the factfinder is required to resolve as a disputed issue of fact.[23]

To prevail on their claim the evidence is legally insufficient to support an award, the Seegers must show no evidence supports the award.[24] But here, even Rutledge testified $7,000 is a reasonable and necessary award for attorney's fees in a case like this one to collect the amount the Seegers were found to owe. Since some evidence supports awarding at least $7,000 in attorney's fees, we conclude the Seegers' argument that the evidence is legally insufficient to support an award lacks merit.[25]

The Seegers also argue the evidence is factually insufficient to support a judgment awarding $51,239 in attorney's fees. When an appellate court conducts a

---

[22]*See Rohrmoos Venture*, 578 S.W.3d at 486-87.
[23]*Id*. at 489.
[24]*See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); Tex. Prop. Code Ann. § 5.006.
[25]*See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

factual-sufficiency review, it evaluates all the evidence admitted in the trial and decides whether the factfinder's verdict is so contrary to the overwhelming great weight and preponderance of the evidence that it is clearly wrong and unjust.[26] In our review, we defer to the jury as the sole factfinder in the trial of the case and to its role in judging the credibility and the weight to assign to the testimony of any witnesses.[27] Thus, on appeal, we assume the factfinder resolved the factual disputes in a manner that favors the verdict unless the evidence is such that no reasonable factfinder could have resolved the dispute that way.[28] Stated another way, if the evidence enabled a reasonable factfinder to reach the verdict being challenged, we may not substitute the judgment the jury made with one of our own.[29]

The Seegers rely on six arguments to support their claim the evidence is factually insufficient to support an award of $51,239 in attorney's fees. First, they argue the award is excessive when compared to the amount in controversy, which was just under $13,000. Second, they contend the Association asked and received more in attorney's fees in the second trial than they obtained in the first, a result they suggest is wrong since this Court reversed the first award. Third, they argue that a reasonable attorney's fee award in a collections case like this typically is much lower

---

[26]*See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).
[27]*City of Keller*, 168 S.W.3d at 819.
[28]*Id*. at 821.
[29]*Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998).

and should rarely exceed $10,000. Fourth, the Seegers contend that Archambault admitted that 90 percent of the time the attorneys spent on the case was spent in defeating the Seegers' counterclaims. Fifth, the Seegers argue that in the trial on remand, the Association once against failed to sufficiently segregate the attorney's fees it sought to collect between the claims on which it had a legally authorized basis to recover attorney's fees and the claims on which it did not. Sixth, the Seegers suggest Archambault gave "scant attention" in the trial on remand to the factors attorneys must consider in setting what is a reasonable fee.

The Seegers' arguments hinge mainly on one claim: in the trial on remand, the Association failed to sufficiently segregate the attorney's fees between the claims on which it was legally authorized to recover attorney's fees and the claims on which it was not. But that claim lacks merit. For example, the evidence shows that Archambault sought to comply with the guidance this Court provided in *Seeger* I. His testimony shows he segregated the time in Exhibit 1 between the time his firm spent on the Seegers' tort counterclaims (on which the Association had no legally authorized basis to recover fees) and the Association's claim against the Seegers to enforce the assessments and to defend against their breach of contract counterclaims (the claims on which the Association had a legally authorized basis to recover attorney's fees).[30] From our review in *Seeger* I, we know that the work required to

---

[30]*See* Tex. Prop. Code Ann. § 5.006; *Rohrmoos Venture*, 578 S.W.3d at 486.

19

defeat the Seegers' contract defenses and to defend against their breach of contract counterclaims consumed most of the time taken up by the issues tried to the jury in 2016, as most of the other claims were disposed of by summary-judgment rulings prior to the trial.[31]

The Seegers argue the Association had no legally authorized right to recover attorney's fees on *any* counterclaims. But *Rohrmoos* contradicts that claim, and Archambault explained that the time entries on which the Association was seeking attorney's fees concerned only claims on which he understood the Association had a legally authorized right to recover on its claim seeking to be awarded reasonable and necessary attorney's fees.[32] Unlike the first trial, Archambault sought to segregate the attorney's fees the Association incurred between the Seegers' tort and contract counterclaims in the trial on remand. Moreover, evidence segregating attorney's fees need not be exacting or extensive to be sufficient to support a factfinder's award.[33]

Archambault's testimony is sufficient here. In the trial on remand, Archambault explained the items he crossed out in Exhibit 1 were for the time his firm performed in helping another firm defeat the Seegers' counterclaims for negligence, civil conspiracy, and intentional infliction of emotional distress. Those

---

[31]*Seeger* I, 2018 Tex. App. LEXIS 3129, at *8-*9.
[32]*Rohrmoos Venture*, 578 S.W.3d at 486
[33]*Tony Gullo Motors I v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006).

claims are the ones we pointed to in *Seeger* I when explaining that as to those claims, the Association had not established it had a legally recognized basis authorizing it to recover attorney's fees.[34]

The Seegers also complain the fees awarded in the trial on remand still contain attorney's fees for the time they claim the Association's attorneys spent defeating their breach of fiduciary counterclaim, a claim they characterize as a tort. We note Exhibit 1 includes one entry, which is for less than one hour, for the work Archambault's firm performed on the fiduciary duty counterclaim. As already mentioned, Archambault testified another law firm, Chamberlain, Hrdlicka, White, Williams, and Aughtry, obtained a summary judgment on that claim. And we explained that Exhibit 1 includes no time entries for that firm's work. Even so, in *Seeger* I, we also never said the Association was not legally authorized to recover attorney's fees for the work it performed to defeat the Seegers' fiduciary duty counterclaim.[35]

Instead, in discussing the fiduciary duty counterclaims in *Seeger* I, we noted the Seegers based the claims on a contract theory, claiming the Association had a fiduciary duty to spend the money it collected in maintenance fees on an individual

---

[34]*Seeger* I, 2018 Tex. App. LEXIS 3129, at *29-*30.
[35]*Id*. at *29-*31.

homeowner's lots.[36] Thus, as the Seegers framed their fiduciary duty theory, their claim paralleled their breach of contract theory. Under both theories, the Seegers claimed the Association breached its obligations to them by failing to provide services to their lots. Thus, the Seegers did not base their fiduciary duty counterclaims on a duty independent from the declarations. For that reason, the breaches parallel each other and both sound in contract, not in tort. Consequently, the Association had a legally authorized basis on which to pursue a claim to recover attorney's fees for the reasonable and necessary work its attorney's performed in defeating the Seegers' breach of fiduciary duty counterclaim under section 5.006 of the Texas Property Code.[37]

Next, we turn to the Seegers' argument that the award is excessive. The Seegers note the results obtained are four times the amount in controversy. To be sure, the amount in controversy is just one of several factors attorneys must consider in setting a reasonable fee.[38] In the trial on remand, Archambault addressed the

---

[36]*Id*. at \*19 ("According to the Seegers, the summary-judgment evidence shows that the Covenants required the Association to spend the Assessment that it collected from the Association's members for their benefit, that they were members of the Association, and that the Association quit providing them with the services they should have received based on obligations that the Association owed them under the Covenants.").

[37]Tex. Prop. Code Ann. § 5.006.

[38]*See* Tex. Disciplinary R. Prof. Conduct 1.04, *reprinted* in Tex. Gov't Code, tit. 2, subtit. G app. (Tex. State Bar R., art. X, § 9); *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

various factors relevant to charging a reasonable fee, explaining his evaluation included considering the amount in controversy. But he also explained he considered the difficulty presented to the Association by the Seegers' trial strategy, which simply put, was to make the effort required to collect what the Seegers owed the Association not worth the cost of collection. The jury heard the Seegers' attorney question Archambault about whether the work Archambault's firm did was reasonable and necessary considering the $12,999 result. He explained it was since the Association had a duty to the other homeowners to collect what everyone owed in fees. The jury also heard Archambault explain the Seegers, like all other homeowners in Del Lago, must pay assessments on their lots. And the jury heard the Seegers' attorney, Rutledge, testify a reasonable fee in a collection case for past due assessment should not exceed $7,000 given the amount at issue in the dispute between the Seegers and the Association. After considering the testimony, the arguments of the attorneys, and resolving the dispute about who to hold responsible for complicating the case, the jury chose to credit Archambault's testimony and place the responsibility for the added litigation expenses in the case involving the Seegers as compared to other cases on the Seegers given the testimony the jury heard about why it was necessary for the prevailing party to incur a significantly higher than normal amount in fees. Archambault also testified the award the Association was seeking based on the items in Exhibit 1 was reasonable and necessary to produce

23

the result based on the circumstances relevant in the Seegers' case. Even though the award is several times larger than the amount in controversy, that ratio is just one of the many factors attorneys and courts consider in deciding whether an award of a factfinder is supported by evidence proving the amount awarded represents a reasonable and necessary fee.[39]

Next, the Seegers complain the amount the jury awarded in the trial on remand is higher than the one they challenged in *Seeger* I. Yet they overlook two things. First, the evidence supporting the award in this appeal is not the same as the evidence before us in *Seeger* I. Second, we remanded the award in *Seeger* I because the award was not adequately segregated, not because the award was excessive.

In the trial on remand, Archambault testified he reduced the time his firm performed from the exhibit that was before us in *Seeger* I. But to Exhibit 1, Archambault explained he then added more time, time entries not on the exhibit the jury considered in the trial in 2016. In the trial on remand, the jury had the discretion to include (or exclude) the additional time entries Archambault added to the exhibit when deciding upon an award. Assuming that we might have reached a result that differs from the one the jury reached here had we been jurors, we are not authorized

---

[39]*Id*.

to substitute our judgment for the jury's (after remittitur) when the verdict the jury reached is reasonable from the evidence before it in the trial.[40]

Of course, when we reversed *Seeger* I, we didn't have a crystal ball and couldn't have known Archambault would discover the additional time he included in Exhibit 1 that Archambault did not present to the jury when he testified in the trial in 2016. Nor could we have predicted that the jury in the trial on remand would find his testimony about the additional time entries credible. Nonetheless, the jury chose to do so, and nothing in the testimony shows the jury's decision is unreasonable given Archambault's explanation about the entries he added to Exhibit 1. Because the Seegers' legal and factual sufficiency arguments lack merit, their first issue is overruled.

*The Charge*

In issue two, the Seegers argue the trial court erred by instructing the jury not to "include fees that Del Lago Owners Association incurred in successfully defending Del Lago Owners Association against Richard Vaughn Seeger's and Beverly Seeger's tort claims." According to the Seegers, the trial court erred by failing to instruct the jury that the word *tort* as used in the charge includes breach of

---

[40]*See City of Keller*, 168 S.W.3d at 821. We note the trial court reduced the award in response to arguments the Seegers presented in their Motion for JNOV for the services of paralegal work included in Exhibit 1. No party complains here about the reduction of the award to eliminate the charges for a paralegal and to reduce the jury's award to avoid a double recovery of costs.

fiduciary claims. But the Seegers never objected to the charge because it does not define *tort*. And they never asked the trial court to instruct the jury that *tort* be defined to include breach of fiduciary duty claims.

The Texas Rules of Civil Procedure establish what a party must do to preserve alleged errors in a charge.[41] Rule 274 requires that a party "point out distinctly the objectionable matter and the grounds of the objection."[42] Rule 274 then states that "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."[43] The Seegers never made the trial court aware of their complaint that they wanted the word *tort* defined in the charge.[44] We conclude the Seegers did not properly preserve their complaint about lack of definition of *tort* in the instructions in the charge.[45]

The Seegers also argue the instruction discussed above amounts to a comment on the evidence. Because they objected to the instruction on this basis, they preserved the objection for their appeal. "To be a direct comment on the weight of the evidence, the issue submitted must suggest to the jury the trial court's opinion

---

[41]Tex. R. Civ. P. 274.

[42]*Id.*

[43]*Id.*

[44]*See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).

[45]*See Greater Houston Radiation Oncology, P.A. v. Sadler Clinic Ass'n, P.A.*, 384 S.W.3d 876, 894 (Tex. App.—Beaumont 2012, pet. denied).

on the matter."[46] Stated another way, an impermissible comment on the evidence by a trial court must "directly advise the jury of the legal effect of its answers, the issue submitted must instruct the jury how to answer each question in order for the plaintiff or defendant to prevail."[47]

The instruction the trial court provided is not a direct comment on the evidence. It does not suggest to the jury the trial court's opinion on the matter. It does not advise the jury how much it should award in reasonable and necessary fees. Instead, it merely instructs the jury not to award fees that are not legally recoverable. Simply put, the instruction does nothing more than represent a correct statement regarding the law. The instruction did not tell the jury how much of the work Archambault did on the tort claims versus the breach of contract claims. Instead, the instruction left it up to the jury to decide if it should apportion the work based the guidance Archambault provided and decide if that amount was reasonable or lower it to another amount. The jury had opinions from two attorneys on what amount was reasonable, one from Archambault that provided detail and another from Rutledge, which was based on amounts that normally apply. The evidence authorized the jury to decide this case fell outside the norm. Stated another way, the trial court's instruction did not nudge the jury either way in striking the proper balance about

---

[46]*H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 24 (Tex. 1998).
[47]*Id.*

how much in attorney's fees was, from the evidence, a fair, reasonable and necessary award.

The instruction also gave the jury guidance about the evidence it heard in the trial discussing this Court's opinion in *Seeger* I. For example, Archambault explained the Association had no legally authorized right to recover attorney's fees for the work the firm's attorneys performed to defend the Association against the claims the Seegers filed for negligence, intentional infliction of emotional distress, and civil conspiracy based on what he understood from *Seeger* I. On the other hand, Rutledge suggested that *Seeger* I prohibited the Association from recovering attorney's fees for any work it did defending the Association against all the Seeger's claims. Thus, the instruction the trial court provided the jury is based on the claims of the parties and the evidence before the jury in the trial.

In our opinion, it was within the trial court's discretion to give the jury the instruction because it: (1) assisted the jury; (2) is an accurate statement of the law; and (3) finds support in the pleadings and evidence.[48] And even assuming the instruction was given in error, we may not reverse a jury's verdict on a claim of charge error unless the record shows the error (1) probably caused the rendition of an improper judgment or (2) prevented the appellant from properly presenting the

---

[48]*Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855-56 (Tex. 2009).

28

case in the appeal.[49] None of those conditions exist here. The instruction assists the jury, accurately states the law as applied to the case, and finds support in the pleadings and the evidence. Nothing in the instruction conveyed the trial court's view about the evidence to the jury. For all these reasons, the Seegers' second issue is overruled.

*Are the Seegers Entitled to a New Trial?*

In issue three, the Seegers argue they are entitled to a new trial because Exhibit 1 does not fairly and accurately summarize the bills the Association received from the attorneys it employed in the Seegers' case. The Seegers note they did not object when the trial court admitted the exhibit into evidence, but they blame their misunderstanding of what the exhibit contains on the Association's attorney even though their attorney reviewed the exhibit before the trial court ruled that the exhibit would be admitted when offered during the trial. The Seegers also did not object to the exhibit when it was offered into evidence during the trial.

We review rulings granting or denying motions for new trial for abuse of discretion.[50] Trial courts may grant motions for new trial for good cause.[51] Even so, a party must file a timely objection to preserve the complaint about the trial court's

---

[49]*See* Tex. R. App. P. 44.1(a).
[50]*Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010).
[51]Tex. R. Civ. P. 320.

ruling before they may be heard to complain about an evidentiary ruling in an appeal.[52]

In their Motion for New Trial, the Seegers argued Exhibit 1 "was admitted under a false pretext, that is, [Seeger's attorney] did not require [the Association] to lay a foundation for its admissibility based upon the representation by counsel that the exhibit merely was a redacted version of [Archambault's firm's invoices.]" But the record shows the Seegers' attorney reviewed Exhibit 1 in a pretrial hearing before the trial court ruled the evidence would be admitted when offered into evidence at trial. Thus, the Seegers' attorney was on notice of the information Exhibit 1 contains. A cursory inspection of the entries in the exhibit reflect it does not track the invoices the Association received from the firms that worked on the Seegers' case from the time the suit was filed. For example, the time entries in Exhibit 1 contain no entries for the work of the firm the Association first hired to file the suit, a firm that Archambault's firm, months later, replaced. The exhibit also contains no time entries for the work Archambault and members of his firm performed on the briefs filed in the Ninth Court of Appeals in *Seeger* 1. Exhibit 1 also contains no time entries for the work done by Chamberlain, Hrdlicka, White, Williams, and Aughtry, the law

---

[52]Tex. R. App. P. 33.1(a)(1) ("The complaint was made to the trial court by a timely request, objection, or motion.").

firm that filed the summary-judgment motions the trial court granted, issuing orders merged into the final judgment the trial court signed in 2016.

The rules of error preservation require objections to be *timely* to preserve a party's complaint for a later appeal.[53] When the objection concerns evidence, the party must generally object to the evidence before the exhibit is admitted into evidence in the trial. In the pretrial hearing, when the trial court asked the Seegers attorney if he had objections to Exhibit 1, he said he had no objections. The attorney also made no objection when the exhibit was offered in the trial. The objection the Seegers raise to Exhibit 1 is one they first raised in their Motion for New Trial, but that makes the objection untimely.[54] Consequently, their complaint that Archambault failed to lay a proper predicate to support admitting the exhibit is an objection they did not properly preserve.[55]

We conclude the trial court did not abuse its discretion in denying the Seegers' motion for new trial given the trial court's discretion to find the Seegers failed to lodge a timely objection to the trial court's ruling admitting Exhibit 1. Issue three is overruled.

---

[53]*Id.*

[54]*Id.*

[55]*Id.*; *St. Paul's Surplus Lines, Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998).

Conclusion

Having overruled the Seegers' issues, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on August 27, 2021
Opinion Delivered May 19, 2022

Before Kreger, Horton, and Johnson, JJ.